IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 01-104

2001 MT 89

_____

OPINION AND ORDER

MICHAEL McDERMOTT,

Petitioner,

v.

JAMES McDONALD, Warden,

Crossroads Correctional Facility,

Respondent.

_____

¶1 Petitioner Michael McDermott (McDermott) is serving a thirty-year sentence for assault and felony bail jumping in the Crossroads Correctional Center. The Board of Pardons and Parole (Board) has denied his application for parole, based in part on his failure to participate in a sexual offender program (SOP). He petitions this Court for a writ of habeas corpus, alleging that the Board has illegally denied him parole. We deny his petition.

BACKGROUND

¶2 In May 1989, McDermott was charged by information with four counts of assault and

four counts of incest against his two stepsons, then aged five and six. The information alleged that, between June 1985 and January 1986, McDermott assaulted his stepsons physically and sexually by burning their arms on the stove, knocking out their teeth, beating them on their legs, buttocks and penis with a wooden spoon and forcing them to engage in anal and oral intercourse. After being charged and released on bond, McDermott fled the jurisdiction. Eventually recaptured, he was extradited back to Montana and charged with an additional count of felony bail jumping.

¶3 McDermott pled guilty to the assault and bail jumping charges in exchange for dismissal of the four incest counts. The District Court sentenced him to five years on each assault charge and ten years on the bail jumping charge, for a total sentence of thirty years. Because of the violent nature of the assaults, because he committed them against young victims and because the court found that he represents a substantial danger to society, McDermott was designated a dangerous offender for purposes of parole.

¶4 McDermott began serving his sentence in May 1992. At that time, an initial needs assessment concluded that he suffers from "severe sexual problems" and recommended that he participate in the prison's treatment program for sexual offenders. McDermott elected not to participate in the SOP, and the Board later considered this fact during evaluations for placement in a prerelease center, for parole and for inmate classification purposes.

¶5 McDermott first applied for parole in September 1998. After notice and a hearing, the Board denied his application, citing McDermott's multiple offenses as well as their nature and severity. It noted that participation in the SOP would "enhance success on parole and further ensure that the applicant is willing and able to fulfill the obligations of a law-abiding citizen." McDermott again chose not to participate. As a result, he had four points added to his classification status for noncompliance with the Board's SOP recommendation. In September 1999, the Board again denied McDermott's parole application, citing the nature and severity of his offenses as well as his failure to comply with the Board's previous SOP recommendation.

¶6 McDermott contends that by requiring him to complete an SOP as a condition to early release on parole, the Board infringed upon his liberty interest in parole without due process of law. He petitions this Court for a writ of habeas corpus ordering his immediate release and rescinding the four points added to his classification status.

## DISCUSSION

¶7 Our due process analysis requires us to determine whether McDermott has a protected liberty interest in parole, and, if so, what process he is due and whether he received that process.

## A. McDermott's Liberty Interest in Parole

¶8 As a general rule, inmates have no liberty interest in parole. *Greenholtz v. Inmates of the Nebraska Penal and Correction Complex* (1979), 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668, 675. We have, however, recognized an exception to this general rule for inmates who committed their offenses prior to 1989. Before that year, Montana's parole eligibility statute stated:

> the board *shall* release on parole . . . any person confined in the Montana state prison . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community. [Emphasis added.]

Section 46-23-201, MCA (1985). The United States Supreme Court held that the mandatory language of this provision created a liberty interest in parole that is protected by the due process clause of the federal constitution. *Board of Pardons v. Allen* (1987), 482 U.S. 369, 377, 107 S.Ct. 2415, 2420, 96 L.Ed.2d 303, 312. Although the Montana Legislature removed the mandatory language in 1989, we determined that inmates who committed offenses prior to the amendment continued to enjoy a federally-protected liberty interest in parole. *Worden v. Montana Bd. of Pardons and Parole*, 1998 MT 168, ¶ 42, 289 Mont. 459, ¶ 42, 962 P.2d 1157, ¶ 42. McDermott committed his offenses in 1985 and 1986. Therefore, he has a protected liberty interest in parole under *Allen* and *Worden*.

¶9 Having determined that McDermott has a protected liberty interest in parole, the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution guarantee that it cannot be denied without due process.

## B. The Process Due McDermott

¶10 There is no absolute standard for what constitutes due process. Rather, the requirements of due process are flexible, so that they may be adapted to meet the procedural protections demanded by a particular situation. *Greenholtz*, 442 U.S. at 12, 99

S.Ct. at 2106, 60 L.Ed.2d at 679. Thus, the process due in any given case varies according to the factual circumstances of the case, the nature of the interests at stake, and the risk of making an erroneous decision. *Sage v. Gamble* (1996), 279 Mont. 459, 465, 929 P.2d 822, 825.

¶11 It is well established that a parole release determination is not subject to all the due process protections required to convict or confine. See *Fardella v. Garrison* (4th Cir. 1982), 698 F.2d 208, 212. Nor must a parole release determination provide the same due process protections as are required in a parole revocation hearing. *In re Sturm* (Cal. 1974), 521 P.2d 97, 102. These situations present a much greater risk of error than a parole release determination because incarceration, whether as a result of conviction or parole revocation, involves a loss of liberty. Denial of parole, on the other hand, involves the loss of the mere anticipation of freedom-freedom to which the lawfully-convicted inmate is otherwise not entitled. As a consequence, the United States Supreme Court has held that due process is satisfied when the prisoner seeking parole is, at a minimum, provided with an opportunity to be heard and a written statement explaining why he was denied parole. *Greenholtz,* 442 U.S. at 16, 99 S.Ct. at 2108, 60 L.Ed.2d at 681; *Sage*, 279 Mont. at 465, 929 P.2d at 825.

C. The Board's Authority to Consider McDermott's Participation in the SOP.

¶12 McDermott does not contend that he was denied an opportunity to come before the Board or that he did not receive a statement of the reasons his parole was denied. Rather, he argues that the Board does not have authority to consider his lack of participation in an SOP as a basis for denying him early release on parole. For support, he relies on two of this Court's recent decisions: *State v. Ommundson*, 1999 MT 16*,* 293 Mont. 133, 974 P.2d 620, in which we held that a district court could not force an offender to complete a sexual offender program that had no correlation or connection to the underlying offense, and *State v. Field*, 2000 MT 268, 11 P.3d 1203, 57 St.Rep. 1123, in which we held that the Board had no authority to impose conditions on a probationer that were not a part of his original sentence. We conclude, however, that neither of these cases limit the Board's authority to consider McDermott's failure to participate in the recommended SOP.

¶13 In *Ommundson*, the defendant pled guilty to driving under the influence of alcohol (DUI). After a presentence investigation revealed that he had more than ten previous convictions for indecent exposure, the district court conditioned suspension of the defendant's DUI sentence on his participation in an SOP. *Ommundson*, ¶ 1. On appeal, we

struck down the SOP condition, holding that "a sentencing limitation or condition must have . . . some correlation or connection to the underlying offense for which the defendant is being sentenced." *Ommundson*, ¶ 11. We based our decision on the requirement of § 46-18-202(1)(e), MCA, that a sentence be "reasonably related to the objectives of rehabilitation and protection of the victim and society." *Ommundson*, ¶ 11.

¶14 McDermott characterizes the Board's consideration of his failure to participate in the SOP as a precondition to parole. He contends that the Board's authority to set such conditions can be no greater than a sentencing court's authority to set conditions on a sentence and, therefore, under *Ommundson*, the Board can only place conditions on parole that have some correlation or connection to the underlying offense. Since he was not convicted of a sex offense, McDermott contends that the Board has no authority to condition his parole on his participation in an SOP.

¶15 We find this argument without merit. First, we do not agree that the Board's consideration of McDermott's failure to participate in the SOP constitutes a precondition to parole. Second, contrary to McDermott's assertion, the Board's authority to impose conditions precedent to parole is both independent of and broader than a court's authority to impose such conditions in a sentence.

¶16 First, McDermott presents no evidence that the Board conditioned his release on his participation in the SOP. His initial parole review indicated that parole was denied because of the nature, number and severity of his offenses. The Board indicated at that time that participation in the SOP would increase the likelihood of a finding that McDermott was "willing and able to fulfill the obligations of a law-abiding citizen" and recommended that he enroll in the SOP "or provide an evaluation that indicates SOP is not required." The Board's willingness to accept alternative evidence strongly indicates that participation in the SOP was not an absolute precondition to parole. McDermott's 1999 parole case disposition report indicates that the Board considered McDermott's "failure to participate in appropriate treatment"-an obvious reference to noncompliance with the Board's previous SOP recommendation. However, there is no indication that this fact was the exclusive, or even most important, factor in the Board's decision to deny parole because the Board once again cited the nature, number and severity of his offenses as the reasons for its denial.

¶17 Second, even if consideration of McDermott's failure to participate in the SOP can be viewed as a precondition to parole, our holding in *Ommundson* does not limit the Board's

authority to set such conditions. McDermott's argument fails to recognize the fundamental difference between imposition of a sentence-as in *Ommundson*-and release on parole. A sentence, or condition included in that sentence, is a *limitation on liberty*. A condition on parole is not. The district court's authority is properly restrained when it acts to limit an individual's freedom. Once lawfully sentenced, however, a prisoner is not entitled to release prior to the completion of his full sentence. Parole, therefore, is a *grant of liberty*. A condition on parole only limits freedom to which the inmate is otherwise not entitled. As a general proposition, then, it is invalid to assume, as McDermott does, that the Board's authority to set conditions precedent to parole is necessarily limited by a court's sentencing authority.

¶18 More specifically, the statutory basis for the court's sentencing authority is not applicable to the Board. In *Ommundson*, this Court held that the statutory requirement that a sentence be "reasonably related to the objectives of rehabilitation and protection of the victim and society," requires that any sentencing limitation or condition have some "correlation or connection to the underlying offense for which the defendant is being sentenced." *Ommundson*, ¶ 11. The "correlation or connection" standard, therefore, was based on a specific statutory limitation on the district court's sentencing authority. While the standard for release on parole is also limited by statute, the Board has considerably more discretion to impose conditions than does a sentencing court.

¶19 Under both Montana and federal precedent, parole is a privilege and not a right. Since parole is granted as a matter of grace, rather than right, the state may offer such grace under and subject to such conditions as it considers most conducive to accomplish the desired purpose. *Harris v. Wainwright* (Fla. 1979), 376 So.2d 855. In Montana, that grace is offered only when, in the Board's opinion, three conditions have been satisfied: "there is a reasonable probability that the prisoner can be released without detriment to the prisoner or to the community," § 46-23-201(1), MCA (1985); when it is in "the best interests of society;" and when the prisoner "is able and willing to fulfill the obligations of a law-abiding citizen." Section 46-23-201(2), MCA. Rather than restricting the authority of the Board to set conditions precedent to parole, these provisions obligate the Board to ensure that no prisoner is released on parole who cannot meet these three criteria.

¶20 As a complement to its broad discretion to grant, deny, or condition parole, the Board is authorized to consider factors that may not be considered by the district court at trial and sentencing. For instance, parole authorities are not limited to consideration of formally adjudicated cases when determining the likelihood of a prisoner's success on parole.

*Christopher v. U.S. Board of Parole* (7th Cir. 1978), 589 F.2d 924. Moreover, they may consider evidence of offenses which were charged in dismissed counts. *Robinson v. Hadden* (10th Cir. 1983), 723 F.2d 59. A parole board may even hear and consider evidence excluded at trial under the exclusionary rule. *In re Martinez* (Cal. 1970), 463 P.2d 734, cert. denied, 400 U.S. 851. In Montana, the Board is specifically required to "consider all pertinent information regarding each prisoner, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of any physical and mental examinations which have been made." Section 46-23-202, MCA (1985).

¶21 We conclude that the Board's authority to condition parole is not limited by our holding in *Ommundson*. Furthermore, the Board's statutory authority is broad enough to permit its consideration of McDermott's dismissed incest counts, the results of his initial needs assessment showing severe sexual problems and his refusal to participate in an SOP when determining whether to grant him an early release on parole.

¶22 McDermott's second argument is based on this Court's recent holding in *Field*. In that case, we held that the Board could not impose a condition on a probationer's postrelease conduct that was not specifically authorized by his sentence. *Field* dealt with a prisoner who had served the full term of his unsuspended sentence and was released on probation. Prior to release, the Board imposed the condition that he have no unsupervised contact with minors. Violation of this condition was later used to rescind the probation and return Field to prison. *Field*, ¶¶ 4-8. On appeal, this Court applied § 46-18-801, MCA, which provides that no "offender may be *deprived of a civil or constitutional right* except as provided in the Montana Constitution or as specifically enumerated by the sentencing judge as a necessary condition of the sentence . . . ." We reversed recision of the suspended sentence after determining that the condition that Field have no unsupervised contact with minors was a violation of his constitutional right to freedom of association and that it was not specifically included as a condition of his sentence. *Field*, ¶ 19. See also *United States v. Brooks* (1995), 270 Mont. 136, 890 P.2d 759 (applying the same analysis to a restriction against owning a gun).

¶23 McDermott argues that the Board's authority to impose conditions on his *parole* can be no greater than its authority to impose postsentence conditions on Field. He contends that, even if the District Court had the authority to impose a condition that he participate in an SOP as part of his sentence, no such condition was included. Therefore, he asserts, as in *Field*, the Board cannot now impose it as a condition of his release. We disagree.

¶24 In applying this Court's holding in *Field*, it is important to distinguish release on *parole* and release on *probation*. Parole, as stated above, is a discretionary grant of freedom from incarceration. Probation is an original condition of sentence that, for some period of time, the offender will not be incarcerated. With this distinction in mind the same arguments made above regarding the distinction between sentencing authority and release authority apply to the distinction between parole and probation. Under *Field*, the Board has no authority to impose conditions on *probation* that were not part of the original sentence because, under the terms of the sentence, Field was entitled to be released at the time and under the conditions set by the court. But *Field* does not limit the Board's authority to place conditions on *parole*. The Board's placement of a condition on *probation* is a restriction on someone who would otherwise be free. A condition on *parole* is a limited grant of freedom to someone who would otherwise be incarcerated. We conclude that our holding in *Field* does not limit the Board's authority to impose conditions on parole and is not relevant to McDermott's case.

## CONCLUSION

¶25 Under § 46-23-201, MCA (1985), McDermott must be released on parole when, in the Board's opinion, he "can be released without detriment to [himself] or to the community," when release is in "the best interests of society," and when he is "able and willing to fulfill the obligations of a law-abiding citizen." Because he committed his offenses prior to 1989, the mandatory language of this statute creates a liberty interest in parole that entitles McDermott to certain due process protections. Nonetheless, the Board retains extremely broad discretion to determine when the statutory criteria for early release have been met. In making this determination, the Board must consider "all pertinent information regarding the prisoner." McDermott, while not a convicted sex offender, had four counts of incest dismissed pursuant to a plea bargain. He has been identified as having severe sexual problems. His completion-or lack of completion-of the SOP is pertinent to his ability to be released without "detriment to the . . . community" and "to fulfill the obligations of a law-abiding citizen." Therefore, the Board was well within its authority to consider McDermott's refusal to enroll in the recommended SOP when it denied his application for an early release.

¶26 McDermott's petition for a writ of habeas corpus is DENIED.

DATED this 17th day of May, 2001.

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER