

DA 09-0471

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 95

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JAYDEE HAAGENSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC 2006-622
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Joslyn Hunt (argued), Chief Appellate Defender, Jim Wheelis, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Hon. Steve Bullock, Montana Attorney General, John Paulson (argued), Assistant Attorney General, Helena, Montana

              John Parker, Cascade County Attorney, Joel Thompson, Deputy County Attorney, Great Falls, Montana

Argued and Submitted: February 24, 2010

Decided: May 4, 2010

Filed:

_____
              Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 After a probation and parole officer revoked Jaydee Haagenson's parole, the Eighth Judicial District Court, Cascade County, revoked the suspended portion of his sentence as well. Haagenson appeals, alleging that this action violated his constitutional right against double jeopardy. We disagree and, thus, affirm.

## BACKGROUND

¶2 In December 2006, the State filed an information charging Haagenson with two counts of criminal distribution of dangerous drugs (methamphetamine), a felony, in violation of § 45-9-101, MCA (2005). These offenses allegedly occurred in January and March of 2006. Haagenson and the State ultimately entered into a plea agreement, pursuant to which Haagenson pleaded guilty to one count of criminal distribution of dangerous drugs and the State recommended a specific sentence as to that count and dismissed the other count. On May 24, 2007, the District Court sentenced Haagenson to the Montana State Prison (MSP) for ten years, with seven years suspended (the sentence recommended by the State). The conditions on the suspended sentence required Haagenson to remain law-abiding and not to consume alcohol.

¶3 Haagenson was released from MSP in July 2007 to attend a drug treatment program in Lewistown. He then was transferred to the Great Falls Pre-Release Center in April 2008 and was granted parole in October 2008. His parole was subject to certain conditions, including that he remain law-abiding and that he not possess or use alcohol. The term of parole was set to expire on May 22, 2010, when Haagenson would begin serving the seven-year suspended portion of his sentence.

2

¶4 On or about May 6, 2009, Haagenson was taken into custody and charged with the deliberate homicide of Jerod Williams, who was choked to death at a residence in Great Falls. Haagenson was intoxicated at the time he allegedly killed Williams. A week later, James Clancy (Haagenson's probation and parole officer) and Eric Tadlock (Clancy's supervisor) held an "onsite hearing" at the Cascade County Detention Center. *See* § 46-23-1024, MCA. At the hearing, Tadlock found that there was probable cause to believe that Haagenson had violated the two aforementioned conditions on his parole by choking Williams to death and by consuming alcohol. Tadlock thus recommended to the Board of Pardons and Parole that Haagenson's parole be revoked, and Haagenson was incarcerated at MSP pending the Board's review of the matter.[1]

¶5 Meanwhile, on May 18, 2009, the State filed a petition to revoke Haagenson's suspended sentence—which, as noted, he had not yet begun to serve. *See State v. Sullivan*, 197 Mont. 395, 400-01, 642 P.2d 1008, 1010-11 (1982) (a suspension of sentence may be revoked for acts done by the offender after sentence is imposed but before he actually begins serving the suspended sentence); *accord State v. Morrison*, 2008 MT 16, 341 Mont. 147, 176 P.3d 1027. The State's petition was based on the same acts that had formed the basis for the revocation of his parole—i.e., the homicide and the use of alcohol. The District Court held a hearing on June 25, 2009, at which time Haagenson moved the court to dismiss the State's petition on the ground that he had

---

[1] According to testimony in the record, a parolee is "deemed revoked" once probable cause of a parole violation is found. The matter is then referred to the Board of Pardons and Parole, and the parolee remains ineligible for community placement until the matter is resolved by the Board. *See* §§ 46-23-1023(3), -1024(3), MCA.

3

already been sanctioned for these acts by having his parole revoked and being sent back to MSP.  Relying on *State v. Martinez*, 2008 MT 233, 344 Mont. 394, 188 P.3d 1034, Haagenson argued that an offender cannot be twice sanctioned for the same acts—here, by first having his parole revoked and then having his suspended sentence revoked.

¶6   The District Court agreed with Haagenson that he had been "sanctioned" for the violations of his conditions of parole by virtue of the fact that his parole had effectively been revoked and he had sent back to MSP.  Thus, the court framed the issue before it as

> whether or not the State's administrative action through the Department of Corrections to technically or effectively revoke Mr. Haagenson's parole on the same allegations that form the basis of the State's petition to revoke his ensuing probation, preclude, as a matter of law, pursuant to State versus Martinez, the Court from -- at this time, in effect, sanctioning Mr. Haagenson in the probation context on the same conduct.

The District Court answered this question in the negative.  The court read *Martinez* as standing for the proposition that the State cannot administratively sanction an offender for a probation violation and also obtain a judicial sanction (in particular, revocation of the suspended sentence) for the very same conduct, as doing so would be "tantamount to a double jeopardy situation."  The court did not find this principle to be applicable here, however, as the State was not attempting a double-sanction for a probation violation. Rather, the court analogized the present situation to one in which a probationer commits an unlawful act and may be prosecuted, convicted, and punished for that act and, based on the very same act, may be subject to sanction for a probation violation as well.  From this, the court reasoned that a sanction for a parole violation is distinct from a sanction for a probation violation, even though the two sanctions are based on the same acts.

4

¶7    The District Court concluded that the administrative revocation of Haagenson's parole did not preclude the otherwise valid revocation of his suspended sentence. Based on its finding, by a preponderance of the evidence, that Haagenson had violated the terms of probation by virtue of the homicide and his use of alcohol, the court revoked the seven-year suspended sentence and sentenced Haagenson to a seven-year term at MSP. The court noted that Haagenson's actions left it with "no confidence" that he can or should be supervised in the community. Haagenson now appeals.

## ISSUE

¶8    Under the facts presented, an offender on parole (serving the un-suspended portion of his sentence) engaged in acts that violated not only the conditions of his release, but also the conditions of the suspended portion of his sentence. Haagenson does not dispute that the violations may be used for revocation of the offender's parole and for prosecution of a separate criminal charge as well (if the acts were criminal). He also does not dispute that a suspension of sentence may be revoked for acts done by the offender before he actually begins serving the suspended sentence. His claim, rather, is that the violative acts may not be used both to revoke the offender's parole and to revoke his suspended sentence, without infringing the prohibition against double jeopardy.

## STANDARD OF REVIEW

¶9    The issue of whether a district court has acted within its statutory authority in revoking a suspended sentence presents a question of law over which we exercise plenary review. *State v. Martinez*, 2008 MT 233, ¶ 16, 344 Mont. 394, 188 P.3d 1034. We also exercise plenary review over questions of constitutional law. *Martinez*, ¶ 16.

5

¶10 At the outset, it is necessary to dispel the notion, argued by the State, that the issue raised by Haagenson has already been decided in *State v. LeDeau*, 2009 MT 276, 352 Mont. 140, 215 P.3d 672. In *LeDeau*, the offender (LeDeau) argued that revoking both his parole and his ensuing suspended sentence based on the same conduct violated his constitutional right to be free from double jeopardy. However, LeDeau had not properly preserved this issue for appeal, and we accordingly had to decide whether to review his claim under the doctrine of plain error review. *See LeDeau*, ¶¶ 13-14. To obtain plain error review of an otherwise procedurally barred constitutional claim, an appellant must make a threshold showing that his claim meets any of the three criteria set out in *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996). *See State v. West*, 2008 MT 338, ¶ 23, 346 Mont. 244, 194 P.3d 683; *State v. Jackson*, 2009 MT 427, ¶¶ 42, 48, 354 Mont. 63, 221 P.3d 1213. We ultimately concluded (albeit, implicitly) that LeDeau had not made this showing, and we therefore declined to decide his claim on the merits. *See LeDeau*, ¶ 18. Granted, in the course of reaching this conclusion, we recited a number of legal principles that bear on Haagenson's claim here. *See LeDeau*, ¶¶ 15-17. But nevertheless, it is self-evident that, by definition, when this Court declines to exercise plain error review of a claim, this Court does *not* decide the merits of that claim. *LeDeau*, therefore, is not controlling authority here.

¶11 By the same token, Haagenson's suggestion that *Martinez* and *State v. Johnston*, 2008 MT 318, 346 Mont. 93, 193 P.3d 925, dictate the outcome of this case is similarly mistaken. In *Martinez*, the offender (Martinez), who was serving a seven-year suspended

6

sentence, violated the terms of his probation on numerous occasions. By statute, a probationer may be arrested for violating a condition of probation, § 46-23-1012(1), (2), MCA, and his probation and parole officer, in turn, must then elect one of three options: (1) authorize the detention center to release the probationer, (2) hold an intervention hearing pursuant to § 46-23-1015, MCA, or (3) arrange for the probationer to appear before a magistrate to set bail, *see* § 46-23-1012(3), MCA. If the probationer is detained and bond is set, then the probation and parole officer must file a report of violation and the court may proceed thereafter with revocation of probation. *See* § 46-23-1012(4)-(5), MCA. In Martinez's case, the probation and parole officer elected initially to address his probation violations through intervention hearings, at which Martinez was sanctioned. But after three such hearings and another probation violation, the officer elected to file a report of violation based on *all* of Martinez's violations. The district court, in turn, revoked his suspended sentence after receiving evidence as to all of the violations. *See Martinez*, ¶¶ 4-12, 19.

¶12 Martinez appealed, claiming that the probation and parole officer lacked statutory authority to seek revocation of his suspended sentence for conduct that had been addressed and sanctioned through the three intervention hearings. He also argued that the revocation of his suspended sentence violated his right to be free from double jeopardy. We agreed that § 46-23-1012(3), MCA, permitted the probation and parole officer to pursue only one of the three options set forth in that statute for an alleged probation violation. *Martinez*, ¶ 18. Thus, by statute, Martinez's suspended sentence could not be revoked based on the same probation violations that had been addressed through the

7

intervention hearings. However, the sentence could be revoked based on violations that had *not* already been addressed through an intervention hearing. Thus, since the report of violation alleged one such violation, we held that the district court did not exceed its authority in revoking Martinez's suspended sentence. *Martinez*, ¶ 20. It followed from this that Martinez had not been double-sanctioned for a single probation violation, and we denied his double jeopardy claim accordingly. *See Martinez*, ¶ 21. We relied on the same reasoning in disposing of an identical double jeopardy claim raised by the offender (Johnston) in *Johnston*. *See Johnston*, ¶¶ 42-44.

¶13 *Martinez* and *Johnston* thus did not present the scenario we face here, in which two sanctions (revocation of parole, plus revocation of the ensuing suspended sentence) were imposed for the same acts. Haagenson, however, reads our remarks about double jeopardy in those cases (*see Martinez*, ¶ 21; *Johnston*, ¶¶ 43-44) as intimating that if Martinez and Johnston had in fact been subjected to multiple sanctions based on the same probation violation or violations, their double jeopardy rights would have been infringed. We acknowledge that the language in those cases could be interpreted in this manner. However, for the reasons which follow, we conclude that a revocation of parole or probation does not implicate the protection against double jeopardy.

¶14 The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." This prohibition, which is applicable to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969), protects against a second prosecution for the same offense after acquittal, a second prosecution for the same

8

offense after conviction, and multiple punishments for the same offense, *Dept. of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 769 n. 1, 114 S. Ct. 1937, 1941 n. 1 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969)); *see also Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 493 (1997) (the Clause protects against the imposition of multiple criminal punishments for the same offense, but only when such occurs in successive proceedings). Article II, Section 25 of the Montana Constitution also protects against double jeopardy. It states that "[n]o person shall be again put in jeopardy for the same offense previously tried in any jurisdiction." We have explained that "double jeopardy exemplifies the legal and moral concept that no person should suffer twice for a single act." *State v. Guillaume*, 1999 MT 29, ¶ 17, 293 Mont. 224, 975 P.2d 312. In *Guillaume*, this Court held that Article II, Section 25 affords greater protection against multiple punishments for the same offense than does the Fifth Amendment to the United States Constitution. *See Guillaume*, ¶ 16. Haagenson invokes this greater protection here.

¶15 A threshold question in applying these constitutional provisions to the present facts is whether a revocation of parole or probation constitutes a "punishment" for double jeopardy purposes. In this regard, various federal courts have determined that revocation of parole, probation, or supervised release is a penalty attributable to the original conviction, not a new punishment, and that the Fifth Amendment's Double Jeopardy Clause, therefore, is not implicated by such revocation. *See United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002); *United States v. Whitney*, 649 F.2d 296, 298 (5th Cir. Unit B 1981) (per curiam); *United States v. Miller*, 797 F.2d 336, 340 (6th Cir. 1986); *United*

9

*States v. Wyatt*, 102 F.3d 241, 244-45 (7th Cir. 1996); *United States v. Bennett*, 561 F.3d 799, 802-03 (8th Cir. 2009); *United States v. Soto-Olivas*, 44 F.3d 788, 789-90 (9th Cir. 1995); *United States v. Woods*, 127 F.3d 990, 992 (11th Cir. 1997) (per curiam). These courts have reasoned that a term of parole, probation, or supervised release replaces a portion of a sentence of imprisonment and is a part of the original sentence. *See Woods*, 127 F.3d at 992; *Wyatt*, 102 F.3d at 245. A revocation proceeding, in turn, is a purely administrative action designed to determine whether a parolee or probationer has violated the conditions of his parole or probation, not a proceeding designed to punish a criminal defendant for violation of a criminal law. *See Woods*, 127 F.3d at 992. By engaging in prohibited conduct (criminal or not) during the term of parole, probation, or supervised release, the offender "triggers a condition that permits modification of the terms of his original sentence." *Wyatt*, 102 F.3d at 245; *see also Pettus*, 303 F.3d at 487 ("The requirement that a defendant only be punished once for a particular crime does not mean that this punishment cannot be modified . . . ."). Revocation thus "amounts only to a modification of the terms of the defendant's original sentence, and does not constitute punishment for the revocation-triggering offense." *Wyatt*, 102 F.3d at 245; *accord Woods*, 127 F.3d at 992 (revocation "constitutes a modification of the terms of the original sentence and implicates solely the punishment initially imposed for the offense conduct underlying that sentence"); *see also Johnson v. United States*, 529 U.S. 694, 700, 120 S. Ct. 1795, 1800 (2000) ("[P]ostrevocation sanctions [are] part of the penalty for the initial offense . . . ."); *cf. Soto-Olivas*, 44 F.3d at 791 (punishment imposed upon

10

revocation is punishment for the original crime, not punishment for the conduct leading to revocation).

¶16 Likewise, under Montana law, a term of conditional release or suspension of sentence[2] is in lieu of a term of imprisonment and is a part of the original sentence. *See* §§ 46-18-201(2), 46-18-203(7), 46-23-201, 46-23-1001(3), (4), 46-23-1025(2), MCA. Parole is a privilege and not a right; and since it is granted as a matter of grace, the State may offer such grace under and subject to such conditions as it considers most conducive to accomplish the desired purpose. *McDermott v. McDonald*, 2001 MT 89, ¶ 19, 305 Mont. 166, 24 P.3d 200. The same is true of a suspension of sentence: It "is a discretionary act of grace by a district court," *State v. Watts*, 221 Mont. 104, 106, 717 P.2d 24, 26 (1986), which may be made subject to such reasonable conditions as the court deems necessary, *see* § 46-18-201(4), MCA. The decision to grant conditional release or to suspend a sentence "is a decision to forego complete denial of liberty by incarceration in favor of a [supervised] period of restricted liberty in the hope that the purposes of rehabilitation of defendant and the protection of the public can be achieved by the lesser deprivation of liberty." *State v. Oppelt*, 184 Mont. 48, 53, 601 P.2d 394, 397 (1979) (internal quotation marks omitted). An offender on conditional release or under a suspended sentence thus "lives with the knowledge that a fixed sentence for a definite

---

[2] The federal cases cited above address the federal probation, parole, and supervised-release systems. For purposes of this Opinion, when discussing Montana law, we use the terms "conditional release" and "parole" to refer to release from imprisonment by the Board of Pardons and Parole and the terms "suspension of sentence" and "probation" to refer to release by the sentencing court without imprisonment. *See* § 46-23-1001(3), (4), MCA.

term hangs over him." *In re Ratzlaff*, 172 Mont. 439, 445, 564 P.2d 1312, 1316 (1977) (internal quotation marks omitted). Revocation of a suspended sentence "indicates a determination by the court that the purposes of rehabilitation are not being served by the suspension," *Watts*, 221 Mont. at 107, 717 P.2d at 26, and revocation of conditional release reflects a similar determination by the Board of Pardons and Parole. Revocation leaves the offender subject to execution of the original sentence as though he had never been given conditional release or a suspension of sentence. *See Ratzlaff*, 172 Mont. at 443-44, 564 P.2d at 1315; *State v. Lange*, 237 Mont. 486, 489, 775 P.2d 213, 215 (1989). But " 'a revocation proceeding is not a criminal adjudication, does not require proof of a criminal offense, does not impose punishment for any new offense, and is an act in the performance of the duty of . . . supervision of [conditional] liberty.' " *Oppelt*, 184 Mont. at 53-54, 601 P.2d at 398 (quoting *State v. Eckley*, 579 P.2d 291, 293 (Or. App. 1978)); *see also Lange*, 237 Mont. at 489, 775 P.2d at 215 (a revocation hearing is not a criminal trial; rather, it is simply "an exercise of the trial court's supervision" over the offender during probation, and the consequence of revocation is execution of a penalty previously imposed); *State v. Walker*, 2001 MT 170, ¶¶ 12, 15, 306 Mont. 159, 30 P.3d 1099.

¶17 Based on the foregoing, we hold that a revocation of parole or probation does not constitute a punishment for double jeopardy purposes under the Fifth Amendment or Article II, Section 25. Rather, it is a supervisory act involving the enforcement of conditions imposed on a term of parole or probation. *See Lange*, 237 Mont. at 489, 775 P.2d at 215; *State v. Chapman*, 721 P.2d 1248, 1254 (Idaho 1986). Upon the demonstration of a probation violation, the sentencing court may modify the offender's

12

original sentence by replacing the term of probation with imprisonment. *See* § 46-18-203(7), MCA. Likewise, upon the demonstration of a parole violation, the Board of Pardons and Parole may simply return the offender to prison. *See* § 46-23-1025(2), MCA. This is not a "punishment"; rather it is a forfeiture of a conditional privilege previously granted by the State as a matter of grace. Thus, the same act or acts may form the basis for revoking both an offender's parole and his ensuing suspended sentence, without contravening the Double Jeopardy Clauses.

¶18 In the present case, Haagenson was granted conditional release and a suspended sentence, both of which were subject to certain conditions including that he remain law-abiding and not consume alcohol. Haagenson violated these conditions and thus forfeited the privilege of that release and his future suspended sentence. Revocation of his parole and revocation of his probation did not constitute "punishments" and, thus, did not implicate the Double Jeopardy Clauses. To hold otherwise would "create an indefensible loop-hole, whereby a convict considered by the court to be unsuitable for public release would be entitled to probation merely because of the timing of his violative conduct" (i.e., if that conduct occurred while he was serving the un-suspended portion of his sentence). *Knight v. United States*, 73 F.3d 117, 123 (7th Cir. 1995).

¶19 Haagenson, however, attempts to cobble together a double jeopardy claim out of the statutory procedures for probation and parole violations and our analysis in *Martinez*. Recall that in *Martinez*, we considered the procedures applicable to *probation* violations and concluded that they permit the probation and parole officer to pursue only one of three options: release the probationer from detention, hold an intervention hearing, or file

a report of violation and seek revocation of probation (after arranging for a magistrate to set bail). *See Martinez*, ¶ 18; § 46-23-1012(3)-(5), MCA. From this and our statements in *Martinez*, ¶ 21, Haagenson reasons that if an intervention hearing is held and the offender is sanctioned, the revocation option cannot be pursued for the same conduct without violating double jeopardy. Applying this rule here, Haagenson contends that because an onsite hearing was held at which he was sanctioned (his parole was revoked), his probation cannot also be revoked.

¶20    There are two problems with this argument. First, despite intimations to the contrary in *Martinez* and *Johnston*, revocation of parole or probation does not constitute a punishment for double jeopardy purposes, as explained above. Second, Haagenson is incorrectly blending the distinct procedures applicable to parole violations and probation violations. The holdings in *Martinez* and *Johnston* were based on our construction of § 46-23-1012(3), MCA, which applies to *probation* violations. With *parole* violations, an onsite hearing is held and a probable cause determination is made; if probable cause exists, a hearing is held before the Board of Pardons and Parole; and if the violation is established, the Board may revoke parole. *See* §§ 46-23-1024, -1025, MCA. Thus, whereas the use of an *intervention* hearing in the *probation* context precludes the subsequent revocation of probation, *Martinez*, ¶¶ 18-20, the use of an *onsite* hearing in the *parole* context does not preclude the subsequent revocation of parole. In fact, an onsite hearing is a required step in the process. But more to the point of Haagenson's argument, § 46-23-1012, MCA, does not preclude the revocation of probation just because the offender has been subjected to an onsite hearing and parole revocation under

14

§§ 46-23-1024 and -1025, MCA. In short, Haagenson has pointed to nothing in the statutes indicating that Officer Clancy could not pursue an onsite hearing and parole revocation under §§ 46-23-1024 and -1025, MCA, as well as a probation revocation under § 46-23-1012(3)(c), (4), and (5), MCA. Our approach in *Martinez* and *Johnston*, therefore, is distinguishable from and inapplicable to the factual circumstances of the present case.

## CONCLUSION

¶21 Haagenson did not receive multiple punishments for a single act. His right to be free from double jeopardy was not violated.

¶22 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT

Justice W. William Leaphart, specially concurring.

¶23 I concur in the result reached by the Court but disagree with the Court's statement in ¶ 10 that, "it is self-evidence that, by definition, when this Court declines to exercise plain error review of a claim, this Court does not decide the merits of that claim. *LeDeau*, therefore, is not controlling authority here."

15

¶24    I do not agree that statements made by the Court in addressing plain error review are susceptible of such an absolute rule. The Court's conclusion that when we decline to exercise plain error review we have, by definition, not addressed the merits can, depending on the case, be superficial.

¶25    We have not been consistent in our use of the verb "decline" as it relates to the "plain error doctrine" versus "plain error review." We have cases in which we simply decline to exercise plain error review with essentially no explanation or indication that we analyzed the appeal under the two *Finley* criteria. *State v. Essig*, 2009 MT 340, ¶ 31, 353 Mont. 99, 218 P.3d 838, 843. We have cases in which we engage in the *review* of the alleged plain error but, in the end, decline to invoke the common law plain error *doctrine*. *State v. Godfrey*, 2004 MT 197, ¶ 40, 322 Mont. 254, 95 P.3d 166 (concluding, after a sixteen-paragraph analysis, that "the particular facts of this case do not compel the application of the plain error doctrine because there simply was no clear comment on or infringement of Godfrey's fundamental right to remain silent"); *State v. Lindberg*, 2008 MT 389, ¶ 35, 347 Mont. 76, 196 P.3d 1252 (declining, after several pages of common law plain error analysis, to invoke common law plain error and holding that "given the totality of the circumstances in this case, the prosecutor's comments *do not* rise to a level sufficient to invoke the plain error doctrine") (emphasis added). Then we have cases in which we (at least to some extent) discuss the merits of the claimed error, and then decline to exercise "plain error *review*." *State v. Rovin*, 2009 MT 16, ¶ 30, 349 Mont. 57, 63-64, 201 P.3d 780 (emphasis added); *State v. Lacey*, 2009 MT 62, ¶ 74, 349 Mont. 371, 397, 204 P.3d 1192 ("None of these [plain error] concerns are present

16

here, and we decline to review Lacey's claimed errors under the plain error doctrine."); *State v. LeDeau*, 2009 MT 276, 352 Mont. 140, 215 P.3d 672; *State v. Shively*, 2009 MT 252, ¶ 24, 351 Mont. 513, 216 P.3d 732 ("Having reviewed the facts and circumstances herein, we conclude that this case is not appropriate for the exercise of plain error review.").

¶26 This latter category of cases arguably presents a semantic inconsistency in that they discuss the merits on one hand and then, on the other hand, "decline to review." In concluding herein that the Court's statements in the latter category of cases are of no precedential value, I believe the Court elevates form over substance. We made clear in *State v. Finley*—our seminal decision laying out the common law plain error doctrine— that even the initial invocation of common law plain error requires this Court to consider or "review" the facts as applied to the *Finley* criteria: "The particular facts and circumstances of each case drive the applicability of the plain error doctrine." *State v. Finley*, 276 Mont. 126, 134, 915 P.2d 208, 214 (1996).

¶27 As a practical matter, we do not address requests to exercise plain error in a vacuum. "When determining whether to apply the common law plain error rule, we must decide whether the errors alleged by Sullivan implicate fundamental constitutional rights." *State v. Sullivan*, 280 Mont. 25, 32, 927 P.2d 1033, 1037. In other words, we frequently review the matter to determine whether the alleged error implicates a fundamental right, and if so, does it result in a miscarriage of justice, implicate the fundamental fairness of the trial or compromise the integrity of the judicial process. If not, we either decline to exercise plain error review, as in *Lacey*, or we decline to apply the plain error doctrine, as in *Godfrey*. In either case, the Court's analysis is of value. Although I think we can avoid this semantic confusion by being more specific as to whether we are declining the review or declining the plain error doctrine, I reject any attempt to establish a categorical rule that anything the Court says in declining plain error review is without precedential value.

¶28 I believe a more appropriate route is to clarify the language we use when considering the applicability of the common law plain error doctrine. This doctrine requires the Court to review the facts of the appeal under two criteria: (1) whether a fundamental right was implicated; and (2) whether failure to review the claim would result in the miscarriage of justice or unfair consequences articulated in *Finley*. *Finley*, 276 Mont. at 137, 915 P.2d at 215. There is no means of avoiding this review, regardless of whether it occurs in one sentence or ten paragraphs of analysis. I would therefore urge the Court to clarify the lexicon associated with common law plain error. The Court "reviews" a party's request to invoke the common law plain error doctrine. If we find that the appeal meets both *Finley* criteria, then we "apply" or "invoke" the common law plain error doctrine.

/S/ W. WILLIAM LEAPHART

Justice Brian Morris and Justice Jim Rice join in the special concurring opinion of Justice Leaphart.

/S/ JIM RICE
/S/ BRIAN MORRIS