DA 09-0392

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 115

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LESLIE GARVIN MAYNARD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2007-33
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens; Smith & Stephens, P.C.; Missoula, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

          Fred Van Valkenburg; Missoula County Attorney; Missoula, Montana

                    Submitted on Briefs:  April 8, 2010

                           Decided:  May 25, 2010

Filed:

          _____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Leslie Garvin Maynard appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, revoking his suspended sentence.  We affirm.

¶2    Maynard presents the following issues[1] on appeal:

¶3    *Did trial counsel render ineffective assistance by failing to argue that § 46-23-1012(3), MCA, prohibits initiation of a revocation proceeding following a seventy-two-hour hold and release?*

¶4    *Did trial counsel render ineffective assistance by failing to argue that initiation of a revocation proceeding following a seventy-two-hour hold and release violates the prohibition upon double jeopardy?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Pursuant to a plea agreement, Maynard pled guilty to Issuing a Bad Check, a Felony Common Scheme, in violation of § 45-6-316(3), MCA, and on April 25, 2007, received a three-year deferred sentence.  He was placed under the supervision of the Department of Corrections and subjected to various conditions and rules and regulations of the Department, including that Maynard report to his probation officer, pay restitution in the amount of $2,218.69, refrain from establishing a checking or credit account, and comply with all laws.

¶6    In October 2008, Maynard's probation officer learned that Maynard had written additional bad checks totaling $1,790.61 and, pursuant to § 46-23-1012, MCA, issued an

---

[1] Although not listed within his Statement of Issues, Maynard states in his briefing that, alternatively, he "appeals the sentence imposed upon him by the district court" on the ground that the court did not take into account the provisions of § 46-18-225, MCA, when sentencing him.  Maynard did not further develop this argument in his brief and we do not address it.  *See DuBray v. State*, 2008 MT 121, ¶ 30, 342 Mont. 520, 182 P.3d 753; M. R. App. P. 12(1)(f).

authorization for law enforcement to pick up and hold Maynard. According to the briefing herein, Maynard was detained on October 30, 2008, and released on November 1, 2008, upon the probation officer's issuance to law enforcement of an authorization for his release. Maynard thereafter remained on active supervision and was required to continue reporting to his probation officer.

¶7 In March 2009, Maynard's probation officer issued a report of violation stating that Maynard had violated four conditions of his suspended sentence, including: (1) failure to report to his probation officer, (2) failure to comply with all laws, (3) failure to pay restitution, and (4) failure to refrain from establishing a checking or credit account. The report articulated how Maynard had violated each condition and the dates of each violation. All of the alleged violations occurred before Maynard's October 2008 detainment.

¶8 Based upon the report of violation, the Missoula County Attorney filed a petition to revoke Maynard's probation. The District Court held a hearing on the petition April 29, 2009, wherein Maynard, with counsel, admitted to all of the facts substantiating the petition. Maynard's counsel presented no argument that, due to Maynard's October 2008 detention, he had been "previously sanctioned" with a seventy-two-hour hold and release, and therefore the petition to revoke was barred. Thus, the District Court did not address the "previously sanctioned" argument, and on May 18, 2009, it revoked Maynard's probation and sentenced him to ten years at the Montana State Prison with five years suspended.

¶9 Meanwhile, a petition for revocation of a different sentence Maynard had received in Ravalli County was also filed, apparently upon the same violations supporting the petition filed in Missoula County.[2] In the Ravalli County proceeding, Maynard's counsel filed a "Motion to Strike Allegation of Violations," arguing that the State could not base its revocation petition upon the alleged violations because Maynard had already been sanctioned for them by his October 2008 detention in Missoula County and, thus, would be receiving a "double sanction." The District Court for Ravalli County granted Maynard's motion as to the "allegations of writing $1,7[9]0.61 in bad checks, maintaining checking accounts at First Citizen's Bank in Missoula, and issuing overdrafts on those account[s]." The court denied the motion regarding the allegation that "Maynard failed to personally report to his probation and parole officer as directed." However, after learning that the Missoula County District Court had revoked Maynard's probation, the Ravalli County Attorney's Office moved to dismiss its petition, noting that Maynard had "been sentenced to ten (10) years, with five (5) suspended in the [Missoula County] District Court, and it seems expedient that Defendant begin to serve his sentence without any further delay in the cause."

¶10 Maynard appeals from the Missoula County District Court's revocation of his probation.

---

[2] Maynard's counsel in Ravalli County was different than his counsel in Missoula County.

**STANDARD OF REVIEW**

¶11 Claims for ineffective assistance of counsel present mixed questions of law and fact, which we review de novo. *State v. Godfrey*, 2009 MT 60, ¶ 10, 349 Mont. 335, 203 P.3d 834 (citing *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509, 74 P.3d 1047).

**DISCUSSION**

¶12 ***Did trial counsel render ineffective assistance by failing to argue that § 46-23-1012(3), MCA, prohibits initiation of a revocation proceeding following a seventy-two-hour hold and release?***

¶13 Maynard argues that because his probation officer detained and released him under § 46-23-1012(3)(a), MCA, for alleged probation violations, the subsequent revocation of his probation upon the same acts constituted an impermissible "double sanction." Noting that his Ravalli County counsel prevailed on this issue, Maynard argues that his Missoula County counsel rendered ineffective assistance for failing to raise it.[3] The State responds that Maynard's seventy-two-hour detention was not a "sanction" under § 46-23-1012(3), MCA, and, thus, counsel did not provide ineffective assistance.

¶14 We have adopted the two-prong ineffective assistance of counsel test as established by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. Under the

---

[3]Maynard acknowledges his ineffective assistance claim is not record-based but argues there is no "plausible explanation" for his counsel's conduct, allowing review on direct appeal. *See e.g. State v. Herman*, 2008 MT 187, ¶ 16, 343 Mont. 494, 188 P.3d 978. The State does not dispute Maynard's argument and we therefore accept the same. The Ravalli County proceeding is not before us in this appeal.

first prong, the defendant must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. A deficiency of performance arises when counsel's actions fall "below an objective standard of reasonableness," thereby denying a defendant his right to counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064. Under the second prong, "the defendant must show that the [counsel's] deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The defendant must demonstrate "prejudice" by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

¶15    In light of the burden upon the defendant to establish both prongs to sustain a claim, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069; *Whitlow*, ¶ 11 ("[I]f an insufficient showing is made regarding one prong of the test, there is no need to address the other prong."). Here, we resolve Maynard's claim under the first prong, and therefore turn to the substantive law governing the issue Maynard claims his counsel should have raised before the District Court.

¶16    If a probation officer reasonably believes that a probationer has violated a condition of probation, the officer may have an arrest warrant or notice to appear issued

6

for the probationer. Section 46-23-1012(1), MCA. The statute then provides the following procedure after an arrest:

> (3) A probation and parole officer may authorize a detention center to hold a probationer arrested under this section without bail for 72 hours. Within 72 hours following the probationer's detention, the probation and parole officer shall:
>
>> (a) authorize the detention center to release the probationer;
>> (b) hold an intervention hearing pursuant to 46-23-1015; or
>> (c) arrange for the probationer to appear before a magistrate to set bail. In setting bail, the provisions of chapter 9 of this title regarding release on bail of persons charged with a crime apply.
>
> (4) If the probationer is detained and bond is set, the probationer and parole officer shall file a report of violation within 10 days of the arrest of the probationer.
>
> (5) After the probation and parole officer files a report of violation, the court may proceed with revocation of probation in the manner provided in 46-18-203.

Section 46-23-1012(3)-(5), MCA.

¶17 We addressed these provisions in *State v. Martinez*, 2008 MT 233, 344 Mont. 394, 188 P.3d 1034. Martinez violated the conditions of his probation on several occasions and, based upon these violations, Martinez's probation officer held three intervention hearings pursuant to § 46-23-1012(3)(b), MCA, and imposed administrative sanctions upon Martinez. *Martinez*, ¶¶ 4, 6-7, 9, 18. The probation officer then filed a report of violation and the District Court ultimately revoked Martinez's suspended sentence. *Martinez*, ¶¶ 11-12. On appeal, he argued "that once the probation officer elects to pursue an intervention hearing under § 46-23-1012(3)(b), MCA, then she cannot also

pursue a revocation hearing before the District Court for the same violation." *Martinez*, ¶ 18. We concluded that "[t]he language of the statute being clearly disjunctive, the probation officer can pursue only one of these options for an alleged violation of probation conditions." *Martinez*, ¶ 18. Because a probation officer's pursuit of both an intervention hearing and a probation revocation for the same violations would sanction a probationer twice under the statute, we agreed with Martinez. *Martinez*, ¶ 18. However, we affirmed Martinez's revocation because he had not been previously subjected to an intervention hearing for one of the alleged probation violations. *Martinez*, ¶¶ 21-22.

¶18  In *State v. Johnston*, 2008 MT 318, ¶¶ 9-10, 346 Mont. 93, 193 P.3d 925, police arrested probationer Johnston for an alcohol-related incident and later arrested him again for partner or family member assault and obstructing a police officer. On both occasions, the probation officer had a warrant issued to arrest and hold Johnston. *Johnston*, ¶¶ 9-10. The probation officer then recommended bond be set pursuant to § 46-23-1012(3)(c), MCA, and each time the District Court agreed. *Johnston*, ¶¶ 39-40. Based upon these incidents, his probation officer filed a report of violation recommending that Johnston's sentence be revoked. *Johnston*, ¶ 11. Citing to *Martinez*, we held in a single sentence, without analysis, that "[t]he District Court could not revoke Johnston's sentence for conduct for which the court already had set bond pursuant to the two petitions of 'Suspected Violation of Probation' without subjecting Johnston to double jeopardy . . . ." *Johnston*, ¶ 42. As in *Martinez*, we nevertheless sustained the revocation of Johnston's

probation because the District Court had not set bond for a different probation violation which supported the revocation. *Johnston*, ¶ 44.

¶19 Maynard was released from detention under the option provided to probation officers under § 46-23-1012(3)(a), MCA. He thus argues, pursuant to our holdings in *Martinez* and *Johnston*, that the probation officer's election to release him prohibits the subsequent proceeding to revoke his probation.

¶20 A reader of our prior decisions may make the assumption that the three disjunctive subparagraphs under § 46-23-1012(3), MCA, are the probation officer's exclusive options with regard to a probationer who is believed to have violated probationary conditions. However, that assumption would be incorrect. As we explained in *Martinez*, the three options under § 46-23-1012(3), MCA, are only "with respect to a *detained* probationer." *Martinez*, ¶ 18 (emphasis added). As noted above, a probation officer may initiate a revocation proceeding without having the probationer arrested or detained, rather, by issuance of a notice to appear through a county attorney under § 46-23-1012(1), MCA, and then proceeding in court under § 46-23-1012(5), MCA, and § 46-18-203, MCA. Likewise, a probation officer may initiate an intervention hearing without first arresting the probationer pursuant to § 46-23-1015, MCA.

¶21 In *Martinez* we essentially equated option (c) under § 46-23-1012(3), MCA— allowing a probation officer to "arrange for the probationer to appear before a magistrate to set bail"—as a sentence revocation for purposes of comparing the three options under that subsection. *Martinez*, ¶ 18. This linkage is implicit within the statutory provisions

9

following option (c), which provide that, after the setting of bail, a probation officer must file a report of violation within a specified time, followed by the revocation proceeding. Section 46-23-1012(4)-(5), MCA. While this linkage was appropriate in the context of the issue raised in *Martinez*—whether a probation officer could pursue both an intervention hearing and a sentence revocation against a detained probationer for the same violation—it is also clear that the mere setting of bail under § 46-23-1012(3)(c), MCA, is not a revocation determination itself. It is simply one step toward revocation. Consequently, our single-sentence analysis in *Johnston*, ¶ 42, that "[t]he District Court could not revoke Johnston's sentence for conduct for which the court already had set bond" under § 46-23-1012(3)(c), MCA, was in error, and is overruled. Setting bail or "bond" is simply the first step in pursuing revocation of a detained probationer. It is not a sanction in itself, and does not preclude the revocation proceeding which would follow the setting of bail.

¶22 Similarly, option (a) under § 46-23-1012(3), MCA, merely "authorize[s] the detention center to release the probationer." Option (a) does not impose a sanction upon the probationer for a probation violation, but merely resolves his detention by release. At that point, the probation officer may determine not to take further action against the probationer; or, the probation officer may elect to either initiate a revocation proceeding under § 46-23-1012(5), MCA, and § 46-18-203, MCA, or an intervention proceeding under § 46-23-1015, MCA, but not both. The statutory structure does not contemplate the pursuit of sanctions by both a revocation proceeding and an intervention hearing for

10

the same violation. *Compare* § 46-23-1012(1), MCA (probationer must "answer to a charge of probation violation" before the court) *with* § 46-23-1015(1), MCA (probationer's compliance with conditions of probation may be obtained by intervention "without a formal revocation hearing"). This is consistent with the options available for a detained probationer under § 46-23-1012, MCA, as we set forth in *Martinez*.

¶23 In summary, a probation officer who has detained a probationer for a suspected probation violation may, pursuant to § 46-23-1012(3), MCA, (a) release the probationer, (b) hold an intervention hearing, or (c) arrange for a magistrate to set bail. Whether the probationer is released or detained, the probation officer may thereafter pursue an intervention hearing or a revocation proceeding for a particular violation, but not both.

¶24 Here, Maynard's probation officer chose to release Maynard from jail under option (a) of § 46-23-1012(3), MCA. After Maynard's release, the probation officer filed a report of violation with the court, thus pursuing a revocation proceeding pursuant to § 46-23-1012(5), MCA. This procedure did not sanction Maynard twice for a probation violation. Consequently, Maynard's claim that he was impermissibly sanctioned twice under § 46-23-1012(3), MCA, would have failed, and his counsel's failure to raise this issue did not fall below an objective standard of reasonableness, and did not constitute ineffective assistance.

¶25 ***Did trial counsel render ineffective assistance by failing to argue that initiation of a revocation proceeding following a seventy-two-hour hold and release violates the prohibition upon double jeopardy?***

¶26 Maynard also argues that the revocation of his probation, coupled with his detainment and release under § 46-23-1012(3)(a), MCA, violated his right under the federal and state constitutions to be free from double jeopardy, and that his counsel rendered ineffective assistance by failing to make this argument to the District Court. He cites again to our statement in *Johnston*, ¶ 42, that "[t]he District Court could not revoke Johnston's sentence for conduct for which the court already had set bond pursuant to the two petitions of 'Suspected Violation of Probation' *without subjecting Johnston to double jeopardy . . . .*" (Emphasis added.) The State argues that a probation revocation is not a "sanction," and therefore does not implicate double jeopardy concerns.

¶27 We likewise resolve this issue under the first prong of the *Strickland* test. The Double Jeopardy Clause of the United States Constitution provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const. amend. V. This provision is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969). The Montana Constitution likewise states, "No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction." Mont. Const. art. II, § 25. This Court has recognized that the Montana Constitution's Double Jeopardy Clause affords Montana citizens greater protection than provided under the United States Constitution. *State v. Guillaume*, 1999 MT 29, ¶ 16, 293 Mont. 224, 975 P.2d 312.

12

¶28 Recently, in *State v. Haagenson*, 2010 MT 95, ___ Mont. ___, ___ P.3d ___, we extensively analyzed the double jeopardy implications of a revocation proceeding. We stated:

> [A] revocation of parole or probation does not constitute a punishment for double jeopardy purposes under the Fifth Amendment and Article II, Section 25. Rather, it is a supervisory act involving the enforcement of conditions imposed on a term of parole or probation. Upon the demonstration of a probation violation, the sentencing court may modify the offender's original sentence by replacing the term of probation with imprisonment. . . . This is not a "punishment"; rather it is a forfeiture of a conditional privilege previously granted by the State as a matter of grace.

*Haagenson*, ¶ 17 (citations omitted). Maynard bases his double jeopardy claim on the assumption that a probation revocation constitutes a punishment or sanction, but we concluded in *Haagenson* that it does not. Our brief statement to the contrary in *Johnston*, ¶ 42, is thus overruled for this reason also. Maynard's counsel did not perform deficiently in failing to raise this argument, and did not render ineffective assistance.

¶29 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

13