FILED

September 1 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0855

DA 13-0855

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 262

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

STEVEN CRAIG GRAVES,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-95-11634
Honorable Robert L. Deschamps III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Anna S. Felton, Law Offices of Anna Felton, PLLC; Libby, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General; Helena, Montana

          Kirsten H. Pabst, Missoula County Attorney; Missoula, Montana

Submitted on Briefs:  June 10, 2015
Decided:  September 1, 2015

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Steven Craig Graves appeals from the judgment of the Fourth Judicial District Court, Missoula County, sentencing him to ten years in Montana State Prison. We affirm in part, reverse in part, and remand for further proceedings.

¶2    The issues on appeal are:

1. *Did the District Court err by revoking Graves' suspended sentence before the suspended portion of his sentence began?*

2. *Was Graves required to sign his conditions of probation before he was subject to those conditions?*

3. *Did the District Court err in denying admission of Graves' out-of-state court records?*

4. *When revoking a 1995 sentence to the Department of Corrections, could the District Court impose a sentence to Montana State Prison?*

5. *Did the District Court err by denying Graves credit for time served while he was incarcerated in Oregon after the petition to revoke his suspended sentence had been filed but prior to transfer to Montana?*

**PROCEDURAL AND FACTUAL BACKGROUND**

¶3    In 1995, Graves pled guilty to forgery and bail jumping in the Fourth Judicial District Court and was sentenced to twenty years with the Department of Corrections (DOC) with ten years suspended. The District Court's sentence made Graves subject to various conditions during the suspended portion of the sentence. Relevant to the issues on appeal, the District Court imposed the following condition:

[D]uring the period of suspension of this sentence the Defendant shall remain under the jurisdiction of this Court and of the Department of Corrections and Human Services, Adult Parole and Probation Bureau of the State of Montana, and the Defendant shall be and is subject to all the rules and regulations of said department. In the event the Defendant breaches

2

> any of the rules of said department or violates any laws of this State or any other states or the Federal Government, he shall be subject to immediate arrest and thereupon brought before this Court to determine if this Court should revoke the suspension of this sentence as in the judgment of this Court which will then seem proper, lawful and just[.]

Any violation of the conditions would result in revocation of the suspended sentence.

¶4 In January 1996, while awaiting transfer to Montana State Prison (MSP), Graves escaped from the Mineral County Jail. A warrant was immediately issued for his arrest on the charge of escape. In March 1997, a governor's warrant was issued to extradite Graves from Bellingham, Washington, where he was being held on the charge of possessing a stolen firearm, and a detainer was placed on him pursuant to the Interstate Agreement on Detainers, § 46-31-101 et seq., MCA. Graves filed final disposition paperwork on the detainer, which required Montana to bring him to trial within 180 days. *See* § 46-31-101 art. III(1), MCA. The State failed to bring Graves to trial within 180 days, so the escape charge was dismissed with prejudice, § 46-31-101 art. III(4), MCA, and the governor's warrant was apparently treated as quashed. The State made no attempt to return Graves to Montana over the next 14 years.

¶5 In October 2011, the Adult Probation and Parole Bureau learned that Graves was serving a supervisory sentence in Oregon. A criminal records check revealed that Graves had been arrested and convicted of multiple felonies and misdemeanors since his 1996 escape. On October 13, 2011, Probation and Parole Officer Kathleen Beccari executed an affidavit in support of a petition to revoke Graves' suspended sentence. On the same day, a deputy district attorney in Oregon filed a fugitive information which stated that Graves was a fugitive from his 1995 forgery conviction and that Montana would extradite

3

Graves. Graves was apparently arrested on the fugitive information filed in Oregon, though the record is not clear on that point.

¶6 On December 8, 2011, the State filed a petition to revoke Graves' suspended sentence with Officer Beccari's affidavit attached. The affidavit stated that Graves escaped from Mineral County jail in 1996 and had been "on the run" since that time. The affidavit then laid out the basis for the revocation petition:

ALLEGED VIOLATION(S)/SUPPORTING EVIDENCE

1. REPORTING: I will personally report to a Probation/Parole Officer as directed. I will submit written monthly reports on forms provided. I will make myself available to Probation/Parole Officers as requested.

ALLEGED VIOLATION: Since his escape from Mineral County jail on or about January 17, 1996 Mr. Graves has not reported to any authority in the Montana Department of Corrections. His whereabouts was [sic] unknown until he was recently found to be on supervision in Oregon.

ADJUSTMENT TO SUPERVISION

A recent criminal history check on this Defendant indicated he has been arrested and convicted of multiple charges, both Misdemeanor and Felony, over the past fifteen years.

A bench warrant was issued on December 12, 2011, on the basis of the revocation petition.

¶7 At the revocation hearing, Graves testified that he did not know he was on probation or that he was required to report to a probation officer. Graves testified that "you're not on probation until you go down there, sit in front of a probation officer, and go through all the regulations and sign in on probation." Graves testified that he was arrested in Washington shortly after escaping from the Mineral County jail and was either

4

incarcerated or under supervision for most, if not all, of the time between his 1997 arrest in Washington and the State's petition to revoke his suspended sentence in 2011. Graves' attorney pointed out that, despite the fact that Graves could have easily been located at any time in those 14 years, the State took no action and never attempted to inform him that he was considered a probationer or have him sign a copy of the conditions of probation.

¶8 At the hearing, Graves' attorney attempted to admit various exhibits from out of state to prove that the State knew where Graves was during the 14 years between his 1997 arrest in Washington and the 2011 petition to revoke his suspended sentence. The State objected to the admission of the exhibits into evidence on the basis of relevance, and then because they were not properly authenticated. Graves' attorney argued that the Rules of Evidence do not apply at a revocation hearing. Ultimately, the District Court only admitted documents from Montana authorities. The District Court stated: "[W]hat I can't tell is what [the state of] Washington did or what developed from that point forward. So those are the ones I'll accept, the Montana documents."

¶9 Graves admitted at the hearing that he had escaped and been convicted of several crimes since his escape. Graves' defense to the revocation was that he had no notice that he was considered a probationer in Montana or was required to report. When asked about returning to Montana while being on probation in another state (Oregon), Graves stated, "[I]f I was notified, I would have came [to Montana] and turned myself in. If they said I was on probation here, I would have turned myself in." Graves stated that he believed

5

the state of Montana had dropped all charges against him since they had taken no action in the 14 years since the escape charge was dismissed.

¶10     At the conclusion of the revocation hearing, the District Court announced:

> I am going to find that he is in violation of the sentence that was imposed by my predecessor back in 1995.
>
> .     .     .
>
> I'm going to find, plainly, that you're in violation of the 10-year suspended sentence.

The court did not explain how Graves had violated the conditions of his suspended sentence at the revocation hearing, but at a later sentencing hearing the District Court orally pronounced a sentence of ten years commitment to MSP with 172 days credit for time served and stated:

> The reasons for the sentence are, sir, you are indeed a career criminal. You've committed numerous felonies during the suspended time. You have absconded. You've escaped. You failed to report. And I don't think you can claim all your troubles on the State of Montana.

The written judgment, dated November 4, 2013, announced the same sentence and gave the reason for the judgment as:

> The Defendant is a career criminal with numerous felonies. While Defendant was on a suspended sentence he absconded/escaped and the Defendant cannot blame the State of Montana for all of his problems.

¶11     Graves appeals the District Court's judgment.

## STANDARDS OF REVIEW

¶12     The standard for revocation of probation is whether the trial judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. This Court reviews a district court's revocation of probation for an

6

abuse of discretion. *State v. Lundquist*, 251 Mont. 329, 331, 825 P.2d 204, 205 (1992) (citing *State v. Robinson*, 190 Mont. 145, 148-49, 619 P.2d 813, 815 (1980)). However, when the issue presented is whether the district court had authority to take a specific action, the question is one of law and our review is de novo. *State v. Stiffarm*, 2011 MT 9, ¶ 8, 359 Mont. 116, 250 P.3d 300.

## DISCUSSION

¶13     *1. Did the District Court err by revoking Graves' suspended sentence before the suspended portion of his sentence began?*

¶14     Graves argues that the District Court erred when it determined Graves violated the conditions of his suspended sentence because he never began the suspended portion of his sentence. In *Stiffarm*, we determined that the District Court could not revoke a suspended sentence before the period of suspension began because the revocation statute stated that petitions to revoke must be filed "*during* the period of suspension or deferral." *Stiffarm*, ¶ 13 (emphasis in original) (quoting § 46-18-203(2), MCA (2009)). The Legislature responded to that decision and amended the statute in 2011 to state that a petition to revoke may be filed "either before the period of suspension . . . or during the period of suspension." Section 46-18-203(2), MCA (2011); 2011 Mont. Laws ch. 230, § 1. The amendment was expressly made retroactive. 2011 Mont. Laws ch. 230, § 3.

¶15     The statute thus allows for a suspended sentence to be revoked for violations of the conditions of suspension before the period of suspension has begun. Graves' argument that he could not have violated the terms of his suspended sentence because the suspended sentence had not yet begun has no merit.

¶16  *2. Was Graves required to sign his conditions of probation before he was subject to those conditions?*

¶17  Graves argues that he had a Fourteenth Amendment due-process right to be notified of the conditions of his probation before he became subject to them. Specifically, Graves points out that § 46-23-1011(2), MCA, requires that "[a] copy of the conditions of probation must be signed by the probationer." Graves was never given a copy of the conditions of probation or asked to sign them because he escaped shortly after sentencing. He argues that, under these facts, it would be a violation of his due-process rights to revoke his suspended sentence for failure to report to a probation officer. We disagree.

¶18  If Graves did not receive due process by being specifically apprised of the conditions of his probation in writing and then signing a copy of the conditions, it was not because he was *denied* due process so much as he *declined* due process by escaping before he had the opportunity to review and sign the conditions. Graves acknowledged that he did not think it was okay for him to escape from the Mineral County jail when he did. When asked if, after his escape, Graves considered whether he should report to somebody that he was "out on the streets," he answered candidly, "[W]hy would I escape and then want to turn myself in to DOC? That doesn't make any sense." Fair point. However, just as it made no sense to Graves that he should turn himself in after escaping, it makes even less sense that he should be allowed to benefit from his escape by claiming ignorance of the terms of his probation. Graves may not have signed the conditions of his probation, but he is nonetheless the author of his own misfortune.

8

¶19    *3. Did the District Court err in denying admission of Graves' out-of-state court records?*

¶20    The day before the revocation hearing, Graves told the District Court that he wished to present an argument regarding credit for good time, which his attorney refused to make. The District Court accordingly allowed Graves to make those arguments on his own behalf, in addition to any arguments by Graves' attorney. The court told Graves at the start of the revocation hearing that it "would let [Graves] put in whatever he thought he needed to preserve the record so, if things go badly for him today, he's got some record on appeal." However, the District Court then refused to admit seven documents introduced by Graves' attorney. The State objected to the documents' admission based on relevance and later for lack of proper authentication. The documents included letters addressed to the Mineral County Attorney originating from the state of Washington and certified mail receipts for the same. At one point, the District Court suggested that Graves should have called the Mineral County Attorney to authenticate the documents or testify to their contents. Graves argues that the District Court violated his Fourteenth Amendment due-process rights by refusing to admit the documentary evidence from out of state at the revocation hearing.

¶21    Although the phrase "due process" is not precisely defined, "the phrase expresses the requirement of 'fundamental fairness.'" *Lassiter v. Dep't of Soc. Serv.*, 452 U.S. 18, 24, 101 S. Ct. 2153, 2158 (1981). The minimum due process requirements for a probation revocation hearing are:

> (1) written notice of the claimed probation violation; (2) disclosure of the evidence against the defendant; (3) the opportunity to be heard in person

9

and present testimonial and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral arbiter; and (6) a written statement of the evidence relied upon by the arbiter and the reason for revoking probation.

*State v. Finley*, 2003 MT 239, ¶ 31, 317 Mont. 268, 77 P.3d 193 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62 (1973)). The rules of evidence do not apply at a probation revocation hearing. M. R. Evid. 101(c)(3); *State v. Pedersen*, 2003 MT 315, ¶ 20, 318 Mont. 262, 80 P.3d 79.

¶22 Graves argues that the District Court's representation that he could admit whatever documents he wished and subsequent refusal to admit various documents violated his due-process rights. Graves argues that he relied on the District Court's assurances that he could present whatever he thought he needed, and that he would have secured sufficient witnesses or other evidence to authenticate the documents he sought to admit were it not for the District Court's assurances. Graves claims the documents would have allowed him to establish that the State knew he was in custody or under supervision for most of the 15 years after he escaped and yet took no action to inform him of the DOC's conditions of probation or that he was expected to follow them.

¶23 The State points out that the District Court's assurances were made only in relation to Graves' argument about good time. The transcript reveals that the District Court told Graves, "I'll let you put whatever you think you need to put in the record, whether [your attorney] thinks it's meritorious or not, so at least it's part of the record." The State argues that the only reason the District Court told Graves he could put whatever he wished into the record was to address Graves' good-time argument. The

exhibits Graves complains about on appeal, however, were not introduced by Graves himself, but by his attorney, and had nothing to do with good time. Therefore, according to the State, Graves could not have relied on the District Court's assurances because those assurances related only to the issue of good time, and the documents the District Court rejected had nothing to do with his argument about good time.

¶24 While the State is correct that the District Court's assurances were given in relation to Graves' argument about good time, the refusal to admit the out-of-state records was nonetheless a due-process violation. In *Gagnon*, the U.S. Supreme Court held that minimum due-process requirements for a probation revocation proceeding require that the probationer be given the "opportunity . . . to present . . . documentary evidence." *Gagnon*, 411 U.S. at 786, 93 S. Ct. at 1762. The *Gagnon* Court drew that requirement from *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972), which held that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489, 92 S. Ct. at 2604.

¶25 Both federal and state courts have found admission of similar, unauthenticated documents in revocation proceedings was proper when presented by the prosecution. *See, e.g., United States v. Miller*, 514 F.2d 41 (9th Cir. 1975) (holding that unauthenticated state court records were admissible); *United States v. Pattman*, 535 F.2d 1062 (8th Cir. 1976) (holding that a police report was sufficiently reliable to admit without the officer's testimony because the report contained the probationer's name and an accurate physical description of him); *United States v. Bell*, 785 F.2d 640

11

(8th Cir. 1986) (holding that a lab report on drug test results was admissible without authentication); *State v. Johnson*, 190 P.3d 455 (Or. Ct. App. 2008) (holding that a defendant's probation file was admissible); *State v. Anderson*, 945 P.2d 1147 (Wash. Ct. App. 1997) (holding that drug test results and an explanatory letter were admissible without authentication). Generally, the limitations courts place on the admissibility of documentary evidence in revocation proceedings arise solely out of concern for a defendant's Sixth Amendment confrontation rights, which was not the case here.

¶26 The State did not initially object that the documents were not authenticated. Instead, the State objected to admission of an arrest warrant from Mineral County for Graves' escape on grounds of relevance, and the District Court raised concerns about authentication. The District Court eventually admitted all of the documents originating in Montana, but refused to admit any documents from Washington, including a postal receipt for registered mail. The State objected to the admission of all of Graves' proffered documents on the basis of foundation, and Graves' counsel offered to have Graves lay a foundation. The District Court appears to have refused to admit the documents from Washington because they did not conclusively establish that authorities in Montana—particularly the Mineral County Attorney—received the documents in question.

¶27 Whether the documents conclusively establish that Montana authorities did or did not receive information about Graves' whereabouts after his escape goes to the weight of the evidence, not its admissibility. Given that the records would have been admissible if the State had presented them, they likewise should have been admitted when offered by

12

the defendant. However, the documents related to Graves' defense that he was not required to report, and we have already rejected his argument that he was not required to report for the reasons discussed at ¶¶ 17-18. The exclusion of these documents does not alter our analysis in that regard. Thus, the District Court's error in refusing to admit the out-of-state documents was harmless.

¶28    *4. When revoking a 1995 sentence to the Department of Corrections, could the District Court impose a sentence to Montana State Prison?*

¶29    Graves' original sentence was a twenty-year commitment to the DOC with ten years suspended. When revoking the suspended portion of the sentence, the District Court here sentenced Graves to ten years in MSP. Graves argues that he must be sentenced under the sentencing statute in effect at the time he committed the underlying offense. Graves' forgery and bail-jumping offenses were committed in 1995 or 1996, so the 1995 sentencing statute applies. *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297 ("[A] person has the right to be sentenced under the statutes which are in effect at the time of the offense."). We addressed this same issue in *Tracy*, and noted that the 1995 sentencing statute provided:

> If the court finds that the defendant has violated the terms and conditions of
> the suspended or deferred sentence, the court may:
>
> .    .    .
>
> (c) revoke the suspension of sentence and require the defendant to serve
> either the sentence imposed or any lesser sentence; . . .

*Tracy*, ¶ 17 (citing § 46-18-203(7)(c), MCA (1995)). We held that a sentence to MSP is not the same or a lesser sentence than a commitment to the DOC. *Tracy*, ¶ 18. Thus, we held that upon revocation, the district court violates constitutional ex post facto principles

13

if it sentences a defendant whose crime was committed while the 1995 version of the sentencing statute was in effect to MSP when the original sentence was a commitment to the DOC. *Tracy*, ¶ 20. Under such circumstances, the sentence must be vacated and remanded to the district court.

¶30 The State concedes that *Tracy* controls here and that the sentence must be vacated. We therefore vacate Graves' sentence and remand to the District Court to amend the judgment to "either the sentence imposed or any lesser sentence." Section 46-18-203(7)(c), MCA (1995).

¶31 *5. Did the District Court err by denying Graves credit for time served while he was incarcerated in Oregon after the petition to revoke his suspended sentence had been filed but prior to transfer to Montana?*

¶32 Graves argues that he should have been given credit for time served while he was incarcerated in Oregon after the Montana warrant was issued on December 12, 2011. "Once a court has determined that a probation violation has occurred, it is within the court's discretion to determine an appropriate action in response to the violation. Section 46-18-203(7), MCA. Barring an abuse of that discretion, this Court will not intervene." *Pedersen*, ¶ 17. Section 46-18-201(4), MCA (1995), provides that "[c]redit . . . must be allowed for jail or home arrest time already served." A defendant is entitled to credit for time served only "if the incarceration was directly related to the offense for which the sentence is imposed." *State v. Henderson,* 2008 MT 230, ¶ 9, 344 Mont. 371, 188 P.3d 1011.

¶33 Graves argues that his sentence in Oregon was for a probation violation, specifically for being a fugitive from justice in Montana. He argues that the time he

14

spent incarcerated in Oregon was directly related to the suspended sentence revocation for which he was sentenced in this case, and thus that he should have gotten credit for time served in Oregon starting from the date of his arrest on the Montana warrant. Moreover, Graves argues that the sentencing judge in Oregon ordered Graves' Oregon sentence to run concurrent to his Montana sentence, and he was released to Montana on December 12, 2011, but Montana failed to extradite him until May 8, 2013.

¶34 The record appears to support Graves' contentions. The fugitive information filed in Oregon is dated October 13, 2011. An Oregon Circuit Court judgment dated November 18, 2011, sentenced Graves to 24 months incarceration to be served concurrent with the case at issue here, Graves' 1995 forgery conviction. A motion to dismiss and judgment of dismissal from the same court, dated December 12, 2011, dismisses the fugitive information and states "DEFENDANT RELEASED TO APPEAR IN MISSOULA, MT." The warrant from Montana was dated the same day as the Oregon court's order releasing Graves to Montana: December 12, 2011. Graves, however, was not extradited until May 8, 2013. He was incarcerated in Oregon for the entirety of the 17 months between the court order releasing him to Montana and his transfer to Montana.

¶35 Graves was available to Montana on December 12, 2011, the date the Oregon court released him to Montana authorities and the Montana warrant was issued. Nothing in the record explains why the State waited 17 months after the warrant was issued in this case to extradite Graves. It appears, however, that the State could have extradited Graves at any time after Oregon released him to appear in Missoula, and he would have received credit for time served as soon as he was extradited. Thus, how much credit Graves would

15

receive for time served depended only on when Montana extradited him. Due process requires that the State execute an arrest warrant without unreasonable delay, given the unique facts of each case, including when the subject of the warrant is incarcerated. *State v. West*, 2008 MT 338, ¶ 33, 346 Mont. 244, 194 P.3d 683. Graves should not be penalized for the State's failure to timely execute the arrest warrant and extradite Graves. On remand, Graves should be given credit for time served from the date Oregon released him to appear in Missoula: December 12, 2011.

## CONCLUSION

¶36    The petition to revoke Graves' suspended sentence was properly filed before the period of suspension began. Graves was not denied due process by not reviewing and signing the conditions of his probation, and the District Court's refusal to admit the documents related to that defense was harmless. The District Court's judgment is affirmed as to those issues. The District Court erred in sentencing Graves to MSP rather than the DOC and in failing to give Graves credit for time served while he was incarcerated awaiting extradition to Montana. Graves' sentence is therefore vacated, and the matter is remanded to the District Court to amend the judgment consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

16