FILED

11/20/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0357

DA 16-0357

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 283

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JAMIE MICHELLE KOON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. ADC 2007-08
                Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad M. Wright, Chief Appellate Defender, James Reavis, Assistant
                Appellate Defender, Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
                Attorney General, Helena, Montana

                Leo Gallagher, Lewis and Clark County Attorney, Lisa Leckie, Deputy
                County Attorney, Helena, Montana

                      Submitted on Briefs:  September 27, 2017

                                      Decided:  November 20, 2017

Filed:

                                  Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Jamie Michelle Koon appeals from the District Court's Order on Defendant's Motion to Dismiss dated April 9, 2015. We affirm and remand for correction of the sentence.

¶2    We restate the issues on appeal as follows:

*Issue One: Whether the District Court erred in dismissing Koon's motion to dismiss the petition to revoke her suspended sentence on the ground that there had been a four-year delay in executing the arrest warrant.*

*Issue Two: Whether the District Court's written judgment should be amended to conform to the oral pronouncement of sentence.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On February 21, 2007, Koon pleaded guilty to felony issuing a bad check in violation of §§ 45-6-316 and 45-2-101, MCA. The District Court in Lewis and Clark County sentenced her to four years in prison with all but thirty days suspended. That sentence was to run consecutively to a sentence Koon was then serving in Colorado, and was subject to conditions including supervision by the Montana Department of Corrections and payment of restitution. She was extradited to Colorado.

¶4    On April 13, 2009, the State filed a petition to revoke Koon's suspended sentence. A supporting affidavit from a probation officer stated that Koon had discharged her Colorado sentence on October 16, 2008, but had not communicated with her supervising probation officer in Montana. Koon's whereabouts were unknown to Montana

2

authorities, and on April 14, 2009, the District Court issued a "Montana only" warrant for her arrest.[1]

¶5   Koon was convicted of another offense in Colorado in 2009 and spent the next four years dealing with her new sentence there, being paroled and revoked several times. In June 2009 Koon wrote a letter to the Clerk of the District Court in Lewis and Clark County asking to be returned to Montana to serve her 2007 sentence. Nothing occurred as a result of that letter, and Koon discharged her Colorado sentences on April 12, 2013.

¶6   Koon returned to Montana at some point and on November 11, 2013, was stopped for a traffic violation in Fort Benton. She was arrested on the April 2009 "Montana only" warrant. On November 14, 2013, Koon appeared on the April 2009 petition to revoke her Montana 2007 suspended sentence. She was released on her own recognizance and ordered to report to her probation officer.

¶7   Koon moved to dismiss the petition to revoke the 2007 suspended sentence, contending that the State failed to bring her to court without unnecessary delay in violation of her right to due process.

¶8   The District Court denied Koon's motion to dismiss, holding that the requirement of § 46-18-203(4), MCA, that an arrested offender must be brought before a judge "without unnecessary delay" applies to the offender's initial appearance after arrest, citing *State v. Edmundson*, 2014 MT 12, 373 Mont. 338, 317 P.3d 169. The District Court determined that Koon's appearance in court within three days of her November

---

[1] A "Montana only" warrant is a case management tool that allows prosecutors and law enforcement administrators to limit the geographical area where a warrant should be served. It provides notice that extradition from another state will not be sought.

3

2013 arrest satisfied the statute. The District Court further concluded that there is no statutory requirement that an arrest warrant be served without unnecessary delay on an offender who is incarcerated in another state.

¶9 Koon also argued that issuing a "Montana only" arrest warrant while she was incarcerated in Colorado violated her due process rights. She contended that after she served her Colorado sentence she could no longer ask the Montana court to set her sentence in this State to run concurrently with her sentence in Colorado. In addition, she alleged that she had a "failing memory," making it difficult for her to recall past events. The District Court applied *State v. West*, 2008 MT 338, 346 Mont. 244, 194 P.3d 683 to determine whether there was a violation of due process. As provided in *West*, the District Court examined the "totality of the circumstances."

¶10 The court considered the four-year time between the 2009 arrest warrant and Koon's arrest in 2013; the fact that her location was unknown when the warrant was issued; and the fact that Koon was subsequently arrested and incarcerated in Colorado under a sentence that was not discharged until 2013.

¶11 The District Court determined that the extradition statutes do not impose a duty on a state to seek the return of a prisoner from another state for purposes of a revocation proceeding. The District Court determined that Koon had "no right to demand a hearing or extradition to Montana" and that her 2009 letter to the Clerk of the Court "triggered no requirement" that she be extradited. The court determined that even if Koon had been returned to Montana during her period of incarceration or supervision in Colorado, she had no right to receive a concurrent sentence to whatever sentence she was serving in

4

Colorado. In addition, her original 2007 Montana sentence was specifically *consecutive* to her Colorado sentences, materially decreasing the likelihood that she would have received a concurrent sentence in any event. In light of all these factors, the District Court determined that Koon had not suffered a deprivation of due process.

¶12 The District Court ultimately held a hearing upon the petition to revoke Koon's 2007 suspended sentence and determined that she had violated the terms of the sentence. The District Court nevertheless sentenced her to the same term of three years, and suspended the entire term.

¶13 Koon appeals.

## STANDARD OF REVIEW

¶14 This Court exercises plenary review of issues of constitutional law. *West*, ¶ 13. This Court reviews a district court's imposition of a criminal sentence for legality only. *State v. Kroll*, 2004 MT 203, ¶ 12, 322 Mont. 294, 95 P.3d 717. This Court reviews a district court's interpretation of a statute as an issue of law, to determine whether the interpretation is correct. *West*, ¶ 13.

## DISCUSSION

¶15 *Issue One: Whether the District Court erred in dismissing Koon's motion to dismiss the petition to revoke her suspended sentence on the ground that there had been a four-year delay in executing the arrest warrant.*

¶16 In 2008 this Court established that "execution of a probation violation warrant without unreasonable delay is one of the due process protections afforded defendants," based upon the due process guarantee of Article II, Section 17 of the Montana Constitution. *West*, ¶ 27. The concept of due process does not have a static definition,

but generally expresses a requirement of fundamental fairness. *State v. Graves*, 2015 MT 262, ¶ 21, 381 Mont. 37, 355 P.3d 769; *Edmundson*, ¶ 17. A probation revocation proceeding is civil, and the offender is not entitled to the full range of constitutional protections available to a person first charged with a crime. *Edmundson*, ¶ 16. Probation revocation deprives an individual not of absolute liberty, but only of the "conditional liberty" that depends upon adherence to established parole restrictions. *West*, ¶ 36. A charged defendant's rights to a speedy trial do not apply in the context of a probation revocation. *Edmundson*, ¶ 16.

¶17 Assessing the due process implications of a particular revocation proceeding requires a flexible approach that provides the procedural protections that the particular case demands. *West*, ¶ 32. Due process is "ultimately measured by the fundamental fairness of the proceeding," *Edmundson*, ¶ 17, and requires "an appraisal of the totality of the facts in a given case." *West*, ¶ 32. The reviewing court should consider the delay in serving the warrant; the State's diligence; the reasons for the delay; the conduct of the probationer; whether the State knows the location of the probationer; and any actual prejudice that resulted. This list is not exclusive. *West*, ¶ 34.

¶18 The Dissent opines that "any straight-up application of the *West* factors to the undisputed facts of this case does not bode well for the State." Dissent, ¶ 35. However, the *West* opinion clearly emphasizes the "flexible" nature of the due process analysis in revocation proceedings, appraising the "totality of facts in a given case." *West*, ¶ 32. Quoting the United States Supreme Court, "That which may, in one setting constitute a denial of fundamental fairness . . . may, in other circumstances and in light of other

6

considerations fall short of such denial." *West*, ¶ 32 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S. Ct. 1708, 1719 (1998)).

¶19    It is established that the time between issuance and execution of an arrest warrant for a probation violation is but one factor for consideration and is "not alone dispositive." *West*, ¶ 34.   In *West*, for example, this Court held that a twenty-six-month delay in executing a probation violation warrant, during which the defendant was in State custody, did not amount to a "per se due process violation." *West*, ¶ 33.  The District Court in this case properly applied *West*, considering the totality of the circumstances, to determine that Koon suffered no violation of due process.   The District Court considered the four-year lapse between issuance and execution of the warrant; the fact that Koon was serving a sentence for offenses in Colorado for most of that time; and that securing Koon's presence for executing the warrant would require initiation of an extradition proceeding.

¶20    The conduct of the probationer is also an important factor in the resolution of this case.  Koon notes that while in custody in Colorado she wrote a letter to the Clerk of the Court in Lewis and Clark County expressing a desire to return to Montana to deal with the revocation warrant.  However, it is difficult to determine how she was prejudiced upon review of these facts.  When she finally discharged her Colorado sentence and returned to Montana in 2013, she did not seek a resolution of her situation.  While obviously aware that the warrant had been issued, she did not notify her probation officer that she had returned as the conditions of her prior sentence required.  Thus, her presence in Montana and the outstanding warrant for her arrest came to light only after she was

7

stopped for a traffic offense. Koon's conduct indicates a desire to evade service of the warrant and an intent to avoid the requirements of her probation. *West*, ¶ 34.

¶21 While Koon argues that she was prejudiced by not being able to argue that her Montana-revoked probation should be served concurrently with her Colorado sentence, her original Montana sentence was specifically imposed as consecutive to the Colorado sentence. Koon has not demonstrated any likelihood that she would have received a concurrent sentence upon revocation in Montana, and she had no statutory entitlement to a concurrent sentence. Section 46-18-401, MCA. We also decline to ascribe any material prejudice to Koon's unsupported suggestion that she could forget the facts of past events.

¶22 We affirm the District Court's decision to deny Koon's motion to dismiss the revocation petition.

¶23 *Issue Two: Whether the District Court's written judgment should be amended to conform to the oral pronouncement of sentence.*

¶24 Koon contends that during sentencing the District Court stated that probation supervision fees would be waived because of her inability to pay. The State concedes that the final written disposition failed to reflect the waiver of supervision fees and should be corrected. The written disposition must conform to the pronouncement of the sentence in open court. *Kroll*, ¶ 15.

¶25 Therefore, we remand to the District Court so that the final disposition of Koon's sentence may be amended to waive supervision fees.

8

**CONCLUSION**

¶26 The District Court is affirmed. This matter is remanded for correction of the final disposition to reflect that Koon is not required to pay supervision fees for probation.


/S/ MIKE McGRATH


We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON


Justice Laurie McKinnon, concurring.

¶27 These proceedings are controlled by our decision in *West*. In my opinion, however, *West* fails to adequately account for the obligations and responsibilities of a probationer; particularly, the requirement fundamental to conditional release that a probationer report to his or her probation officer. Probation is a "conditional privilege previously granted by the State as a matter of grace." *State v. Maynard*, 2010 MT 115, ¶ 28, 356 Mont. 333, 233 P.3d 331, quoting *State v. Haagenson*, 2010 MT 95, ¶ 17, 356 Mont. 177, 232 P.3d 367.

¶28 In *West*, the record established the defendant had been incarcerated and under State supervision during the entire period of time the arrest warrant remained outstanding. *West*, ¶ 7. Likely as a consequence, the Court's enumeration of "factors" to

9

be considered in assessing "unreasonable delay" focused on the State's reasons for not bringing a probationer to court when the probationer was being held under state authority and unable to report. *West*, ¶¶ 34-35. Implicit to the *West* analysis was the fact that West was unable to comply with conditions of probation due to his incarceration in another Montana detention facility, thus implicating due process and fairness considerations and a demand that the State justify its actions. Arguably, West was not conditionally released when he was incarcerated during the time the warrant remained outstanding.

¶29 In contrast, when a probationer is released, even intermittently, and does not report and abide by the rules of probation, the State's issuance of a probation-violation warrant should not shift the inquiry away from the probationer's underlying obligation to report. To place the burden on the State to justify its failure to execute the arrest warrant not only distorts the fundamental nature and purpose of probation, but also relieves the probationer of her obligation to report. In my opinion, a straightforward application of the *West* factors, as the Dissent urges, fails to account for the circumstances present here—where there were intermittent periods while Koon was on parole and after she had completed her Colorado sentence when she could have addressed her reporting obligations, but nonetheless chose to disregard those obligations.

¶30 Although this Court stated in *West* that the prohibition against unreasonable delay "contemplates a case-by-case analysis, not hard-and-fast rules" the Court set forth "several factors," precisely six, which "*must* [be] consider[ed] in making a determination of reasonableness." *West*, ¶¶ 33-34 (quotation omitted and emphasis added). Focusing on the State's actions, the *West* factors are: (1) the length of delay between the *State*'s

10

issuance and execution of the warrant; (2) the *State's diligence* in attempting to serve the warrant; (3) the reasons for the *State's delay* in executing the warrant; (4) the conduct of the probationer in *frustrating the State's actions* to execute the warrant; (5) whether the *State knew* of the probationer's whereabouts; and (6) any prejudice to the probationer *caused by the State's delay* in executing the warrant. *West*, ¶ 34. In my opinion, *West* is inadequate to address the present circumstances. Here, the focus should not be on the State's actions where Koon had opportunities to report, was required by her conditions of probation to report, and failed to report. *West* falls short in its analysis by focusing the inquiry on the State's actions, giving little regard to the underlying nature of a revocation proceeding and the fundamental requirement of the probationer's obligation to report.

¶31   Pursuant to *West*, the risk of having a revocation proceeding dismissed for failing to timely execute an arrest warrant falls entirely on the State regardless of whether the probationer, who in the first instance has the obligation to report, was able to report. Here, Koon failed to report when she discharged her Colorado sentence in April 2013 and thereafter relocated to Montana. Koon, on numerous occasions, failed to keep her probation officer informed of her whereabouts. Koon was also released on parole intermittently and failed to report. The inquiry pursuant to *West* remains focused only on the State's actions, without due consideration of the probationary context of the proceedings and the probationer's obligation to report. The failure of a probationer to report when able to do so nowhere informs the *West* inquiry or is otherwise set forth as a factor to be considered.

11

¶32    It is well-established that a probationer has a due process guarantee protected by Article II, Section 17 of the Montana Constitution, which ensures that the execution of a probation-violation warrant occurs without unreasonable delay. *West*, ¶¶ 26-27. Despite its acknowledgment that due process is a "flexible" concept, *West*, ¶ 33, I am concerned that *West* has distorted the nature of a revocation proceeding and the State's obligations. In the context of a probationer who had the ability to report but chose not to do so, *West*'s six-factor test is inadequate to address the question of whether there has been "unreasonable delay" in executing a warrant. While the *West* factors may inform the inquiry when a probationer is incarcerated for the entire period the warrant remains outstanding, *West* fails to adequately articulate considerations which pertain to the underlying nature of a revocation proceeding and which also consider the probationer's obligation to report.

¶33    I would revisit *West* and its underlying analysis. I otherwise concur in the result reached by the Court.

/S/ LAURIE McKINNON

Justice Dirk M. Sandefur, dissenting.

¶34    I dissent. In 2008, for better or worse, in the manifest absence of any recognized uniform criteria for objective assessment of the demands of constitutional due process in the face of the State's lack of diligence in the execution of arrest warrants issued on probation violations, this Court extended and built on the United States Supreme Court's

traditional four-factor Sixth Amendment speedy trial test from *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972) (the length of delay, the reason for delay, the defendant's actual desire for speedy trial, and resulting prejudice to defendant), to craft a new, six-factor Montana Constitutional due process analog for assessing unreasonable State delay in executing on probation violation warrants. *State v. West*, 2008 MT 338, ¶¶ 22-36, 346 Mont. 244, 194 P.3d 683 (adopting a six-factor totality of the circumstances balancing test: length of delay, State diligence in attempting to arrest defendant, whether defendant impeded arrest, whether defendant's whereabouts were known or readily ascertainable to State, reasons for State delay, and degree of resulting prejudice to defendant). The Court jumped onto this slippery slope despite its express recognition that the fundamental right to a speedy trial, guaranteed by the United States and Montana Constitutions, does not apply to probation revocation proceedings.

¶35 Any straight up application of the *West* factors to the undisputed facts of this case does not bode well for the State. Three of them—the length of the delay, the State's diligence in executing on the warrant, and whether the defendant's whereabouts were known or reasonably ascertainable—all weigh heavily against the State. Two of them—resulting prejudice and defendant impedance of State efforts—weigh moderately against the State. Only one of them—the reason for the State delay—weighs moderately in the State's favor.

¶36 Four years and seven months—1,672 days—passed before the State arrested the defendant. The State, not the issuing court, unilaterally deemed the warrant a "Montana only" warrant. At all times pertinent, the State was well aware, or reasonably should

13

have been on any diligent effort, of the defendant's whereabouts. When it filed its probation revocation petition and obtained an arrest warrant, the State was aware that the defendant was then in Colorado under the preeminent supervision of the State of Colorado as the State expressly based its revocation petition on the defendant's failure to timely report to her Colorado probation officer. A week later, the State became aware that the defendant was in the custody of the State of Colorado where she thereafter remained in continuous Colorado custody or supervision until April 2013.

¶37 When the State wants to treat a Montana case as a serious matter, it does not put a Montana arrest warrant into the national or interstate criminal justice information databases and then declare the warrant to other jurisdictions as "Montana only." This practice merely subjects the defendant and other jurisdictions to a costly, burdensome, and recurring catch-and-release exercise. Rather, it puts an unrestricted Montana warrant into the criminal justice information system and, upon notification of an arrest of a Montana fugitive in another jurisdiction, immediately places an interstate detainer on the fugitive forcing the other state to "hold" the defendant for extradition back to Montana upon the conclusion of proceedings in that state. The State did neither here. Why? Because it did not view the case as important enough to pay for the cost of transporting the defendant back to Montana.

¶38 Compounding matters for purposes of the *West* analysis, Koon, by formal Montana court filing while in Colorado custody in June 2009, affirmatively requested that Montana place an interstate detainer on her for the purpose of facilitating her extradition back to Montana to promptly resolve this matter upon conclusion of her

14

Colorado incarceration. Despite awareness of the request, Montana prosecutorial and probation officials simply ignored Koon's request and allowed the "Montana only" warrant to continue to pend without further action or attention. Three years later, while still on probation in Colorado, Koon called the Montana prosecutor's office, expressed her desire to return to Montana, and requested information and assistance from Montana officials in getting Colorado and Montana to approve an interstate transfer that would allow Montana officials to supervise the balance of her Colorado probation in Montana in conjunction with her concurrent Montana probation, thereby allowing Koon *to voluntarily return* to Montana at no cost to the State to resolve this matter. In a classically ridiculous, bureaucratic Catch-22, which neither the State nor the Court make any attempt to defend, Colorado refused to approve an interstate transfer due to the pendency of the Montana warrant, a warrant that was neither important enough for Montana to extradite on or to quash to allow the defendant to return at her expense to resolve this matter. Why? Because the State did not have to and did not care enough about the case to do so. After fully discharging her Colorado probation, Koon returned to Montana, enrolled her children in high school in Great Falls, obtained gainful employment, and was working two jobs at the same time to make ends meet when she was stopped for a traffic offense and arrested and jailed on the almost five-year-old Montana warrant.

¶39 As to the *West* prejudice factor, Koon made no showing that she suffered any prejudice to the evidentiary merits of her case as a result of the almost five-year delay. However, it is undisputed that the State arrested and jailed her on an almost five-year-old

warrant issued not on any new criminal conduct but, rather, issued merely on a by then long-resolved failure to timely report to her Colorado probation officer. Given its manifest disregard for this case until Koon literally fell into the State's net after almost five years, it is disingenuous at best for the State to now assert that it had any compelling law enforcement interest in this case sufficient to offset the inherently prejudicial nature of Koon's arrest, incarceration, related loss of employment, and family disruption. While Koon is at least partially responsible for this prejudice due to her failure to surrender to authorities on her return to Montana, the primary focus of the *West* test is on the reasonableness and effect *of the State's efforts* to arrest a probation violator. Even on balance with Koon's failure to surrender herself after returning to Montana, the State's utter disregard for this case significantly undercuts any assertion that its usually compelling interest in law enforcement justifies the inherent prejudicial nature of Koon's arrest, incarceration, associated loss of employment, and family disruption in a case the State could not care less about. Under these extraordinary circumstances, the *West* prejudice factor weighs moderately against the State.

¶40 *West* next focuses on whether and to what extent, if any, the defendant impeded the State's efforts to arrest her. Again, while Koon is certainly responsible for failing to surrender to authorities on returning to Montana, any assertion that she impeded the State's non-existent efforts to arrest her is ridiculous. The inconvenient fact is that the *State made absolutely no effort* to arrest Koon before she fortuitously fell into its hands on an unrelated traffic stop. Even liberally construed in the State's favor, the *West* warrant-impedance factor at best balances evenly between the State and the defendant.

16

¶41    The only *West* factor that even remotely weighs in favor of the State is the reason for the delay. The State's only justification for its utter disregard for Koon's fundamental liberty interest, and concomitant due process right to be free from infringement thereof except pursuant to a fundamentally fair process of law, is the approximate $1,800 cost of extraditing her back to Montana from Colorado. Though a valid reason as far as it goes, it is highly doubtful that a single member of Montana's judicial, prosecutorial, law enforcement, gubernatorial, or legislative communities would, if at all candid, find an $1,800 savings to be a compelling justification for the arrest and jailing of any one of them or a family member under similar circumstances. While not particularly compelling under the totality of the circumstances, the *West* reason-for-delay factor must nonetheless still weigh moderately in favor of the State. Regardless of the fact that due process is flexible and that no single factor is dispositive, the *West* criteria clearly balance out against the State, thus necessitating a finding of unreasonable delay in arresting Koon under the totality of the circumstances.

¶42    The State does not challenge on appeal the continued validity of the *West* test. The Court's opinion is conspicuously void of any particularized consideration and careful balancing of all of the *West* factors. The Court instead narrowly focuses on the District Court's obviously correct—but not due-process-dispositive—conclusions of law that fugitives have no right to be extradited, the State has no duty to extradite fugitives, and that the defendant had no right to a concurrent dispositional sentence on her revocation even if promptly arrested. Merely noting that due process is flexible, recognizing that no single *West* factor is dispositive, and then focusing solely on considerations favorable to

17

the State is hardly the type of careful balancing demanded by *West* and other balancing tests adopted by this Court. If we are of the view that our adoption of the *West* test was either improvident from the outset or has not proven out on experience, then we should straight up say so and discard it. If not, we should require the same particularized elemental consideration and careful balancing under the totality of the circumstances that *West* demands and then let the chips fall where they may regardless of whether we like the result in a particular case. I dissent.

/S/ DIRK M. SANDEFUR

Justice Jim Rice joins in the dissenting Opinion of Justice Sandefur.

/S/ JIM RICE