FILED

11/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0499

DA 18-0499

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 278

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

SCOTT STEVEN FJELSTED,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Chouteau, Cause No. DC-16-09
Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Caitlin Boland Aarab, Boland Aarab PLLP, Great Falls, Montana

      For Appellee:

         Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

         Stephen A. Gannon, Chouteau County Attorney, Fort Benton, Montana

         Submitted on Briefs:  September 9, 2020

                   Decided:  November 4, 2020

Filed:

                          _____
                                 Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Scott Steven Fjelstad appeals a Twelfth Judicial District Court order revoking his deferred sentence for criminal endangerment. We affirm.

¶2      We address the following issue on appeal:

> *Whether the District Court abused its discretion when it revoked Fjelstad's deferred sentence after he failed to report to his probation officer for five months.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      In August 2016, Fjelstad was charged with felony driving under the influence.[1] He pleaded guilty to an amended charge of criminal endangerment, a felony, in violation of § 45-5-207, MCA (2015), in March 2017. His sentencing hearing took place in May 2017. The District Court sentenced him to five years to the Department of Corrections (DOC), with all time suspended, and imposed all standard conditions of probation.

¶4      Fjelstad remained compliant with the terms of his suspended sentence through October 31, 2017. In April 2018, the State filed a petition to revoke his sentence. The petition alleged that Fjelstad violated four conditions of his suspended sentence, including absconding; failing to follow the directions of the chemical dependency evaluator; failing to pay fees; and testing positive for methamphetamine and amphetamine. Fjelstad denied the violations and the District Court held an evidentiary hearing in June 2018. The court

---

[1] Some of the District Court documents and Appellant's opening brief spell Appellant's last name "Fjelsted," but the District Court judgment spells his name "Fjelstad." The Department of Correction's website also spells his name "Fjelstad," and lists "Fjelsted" as a name he is also known as. We will refer to the Appellant as "Fjelstad."

2

heard testimony from Tomeka Williams, Fjelstad's probation officer, and Cheryl Basta, his chemical dependency counselor.

¶5     At the hearing, Williams testified that Fjelstad signed the rules of probation, which required him to report to her as directed.  He was initially required to report once a month; however, after he committed violations at the end of August and beginning of September, he was required to report and conduct urinalysis (UA) tests more often.  Williams testified that Fjelstad's last contact with probation and parole was October 31, 2017.  After that, Williams was not able to reach him.  She called Fjelstad on November 29, 2017, December 21, 2017, and January 1, 2018, and she left messages instructing him to call her. In addition to phone calls, Williams sent a letter to the address Fjelstad provided to the probation office.  However, the letter was returned because Fjelstad had not provided a unit number.  Williams testified that she called Basta, but Basta could not contact Fjelstad either.  Williams acknowledged that she did not try to go to Fjelstad's home, even though it was 0.3 miles from her office, but testified she did not do so because she did not have a unit number.  She also did not attempt to contact Fjelstad's landlord because she did not have the landlord's name and number at that time, but she did admit to having a billing address.  Williams did not remember whether she had contacted Fjelstad's employer.  On January 1, 2018, Williams requested a warrant be issued for Fjelstad.  After Fjelstad was arrested in April 2018, he told Williams somebody had come into his residence and stolen his phone, but that he had since rectified the situation.

3

¶6     Basta testified she conducted a chemical dependency evaluation on Fjelstad in June 2017 and determined he needed treatment, which he entered into with Basta. One of Fjelstad's treatment requirements was to comply with random UA tests. In September 2017, Basta learned Fjelstad tested positive for methamphetamine and amphetamine in a test administered by probation and parole, and she requested he provide another sample for a UA test. He refused. Basta eventually terminated him from treatment because he failed to show up for two appointments without rescheduling and did not respond to a text message and letter she sent to him. Fjelstad told Basta that his phone had been stolen but he had or was getting another phone. He provided another number for her to contact him.

¶7     The District Court found the State met its burden of proving by a preponderance of the evidence that Fjelstad committed the violations alleged in the State's petition to revoke, including the violation of absconding. The only non-compliance violation was the absconding violation. At sentencing, the court stated, "It is possible that this officer did not do all that she could have. But Mr. Fjelstad has a burden upon him. . . . You have to keep in contact with the probation officer and tell them that your phone is stolen. Beyond that, you did not report." The court imposed a five-year commitment to the DOC with two years suspended and credited Fjelstad for time served. The Court explained it was imposing the sentence because Fjelstad failed to maintain compliance during his time on probation, including drug use, failing to pay fines, and absconding supervision.

4

**STANDARD OF REVIEW**

¶8      A trial court's statutory interpretation is a question of law this Court reviews for correctness. *State v. Duong*, 2015 MT 70, ¶ 11, 378 Mont. 345, 343 P.3d 1218. When the issue presented is whether the district court had authority to take a specific action, the question is one of law and subject to de novo review. *State v. Graves*, 2015 MT 262, ¶ 12, 381 Mont. 37, 355 P.3d 769. However, "we review a district court's decision to revoke a suspended or deferred sentence to determine whether the district court's decision was supported by a preponderance of the evidence in favor of the State, and if it was, whether the court abused its discretion." *State v. Goff*, 2011 MT 6, ¶ 13, 359 Mont. 107, 247 P.3d 715. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Weldele*, 2003 MT 117, ¶ 72, 315 Mont. 452, 69 P.3d 1162.

**DISCUSSION**

¶9      *Whether the District Court abused its discretion when it revoked Fjelstad's deferred sentence after he failed to report to his probation officer for five months.*

¶10      In 2015, the Montana Legislature enacted Senate Bill 224, establishing the Commission on Sentencing in order to address prison overcrowding, high recidivism of first-time criminal offenders, and the growing impact of substance abuse on people in the state's criminal justice system. *State v. Oropeza*, 2020 MT 16, ¶ 3, 398 Mont. 379, 456 P.3d 1023. One of the initiatives proposed by the Commission was Senate Bill 59, which required the DOC to adopt, maintain, and implement the policy known as the

Montana Incentives and Interventions Grid for Adult Probation & Parole (MIIG) to guide supervision of offenders. *Oropeza*, ¶ 4 (citation omitted).

¶11 The MIIG provides guidelines for probation and parole officers that create consistency with incentives and interventions for offenders. *Oropeza*, ¶ 5. The MIIG incentivizes positive behaviors and provides guidance on intervention responses when an offender violates a condition of their probation or parole. *Oropeza*, ¶ 5. The MIIG also separates condition violations into two categories: compliance and non-compliance. *Oropeza*, ¶ 6 (citing § 46-18-203(7)-(12), MCA). Most violations are categorized as compliance violations and cannot result in an automatic revocation of a deferred or suspended sentence but must be addressed utilizing the MIIG procedures. Section 46-18-203(8)(a), MCA. However, non-compliance violations, including absconding, can result in a direct revocation and are not subject to the MIIG procedures. Section 46-18-203(7)(a)(iii), MCA.

¶12 Fjelstad maintains that he merely failed to report, a compliance violation, but did not abscond. He argues that the District Court erroneously revoked his suspended sentence for this compliance violation that should have been addressed through MIIG procedures. We disagree and conclude the State met its burden of proving Fjelstad absconded.

¶13 Section 46-18-203(11)(a), MCA, defines "absconding" as an "offender deliberately mak[ing] the offender's whereabouts unknown to a probation and parole officer or fail[ing] to report for the purposes of avoiding supervision, and reasonable efforts by the probation and parole officer to locate the offender have been unsuccessful." In other words, to bypass the MIIG and proceed directly to revocation of a defendant's suspended sentence, the State

6

is required to prove that the defendant (1) deliberately made their whereabouts unknown to a probation and parole officer or failed to report for the purposes of avoiding supervision, and (2) that reasonable efforts by the probation and parole officer to locate the offender were unsuccessful. Section 46-18-203(11)(a), MCA. Fjelstad argues that the State met neither requirement.

**Failure to report for purposes of avoiding supervision**

¶14 When determining whether an offender "deliberately" made his whereabouts unknown or failed to report "for the purposes of avoiding supervision" under § 46-18-203(11)(a), a court can infer the defendant's state of mind from the defendant's actions or lack of actions. *See State v. Sage*, 221 Mont. 192, 199, 717 P.2d 1096, 1100 (1986) (stating the jury can infer the defendant's mental state from the defendant's actions and the circumstances involved). Additionally, in *Oropeza*, we held that evidence Oropeza knew he was supposed to report, was directed to report, and failed to report for over three months was "beyond adequate to" make a finding that he failed to report for the purpose of avoiding supervision. *Oropeza*, ¶ 18. Similar to Oropeza, Fjelstad was required to report at least monthly, if not more, and he failed to do so for over five months. Fjelstad did not report from November 2017 through March 2018, even though he was instructed to report when initially placed on probation and his probation officer left him messages warning him that he needed to report. Fjelstad also failed to include his unit number in his address, which resulted in the letter being returned to Williams. These facts are sufficient for a District Court to conclude Fjelstad deliberately made his whereabouts unknown and failed to report for the purpose of avoiding supervision.

7

¶15    Fjelstad argues that an important distinction exists between *Oropeza* and his case in that Oropeza ignored two direct communications from his current and past probation officers instructing Oropeza to report the following day. Fjelstad maintains that Oropeza's willful disobedience of two direct orders from probation officers was sufficient to demonstrate a "purpose of avoiding supervision." In contrast, Fjelstad contends he never received any direct communication from the probation office because his phone was stolen and the letter was returned. Thus, Fjelstad maintains that his conduct does not amount to a purposeful avoidance of supervision. We do not find this argument persuasive, nor do we find the distinction between the facts in *Oropeza* and here significant. The reason Fjelstad did not receive any direct communications from Williams was because Fjelstad, himself, failed to provide her a complete address and updated phone number. It is a defendant's responsibility to provide correct contact information to the probation office. Fjelstad signed the rules of probation form, acknowledging that he was to report monthly, and his failure to do so for over five months supports a finding that Fjelstad made his "whereabouts unknown or failed to report for the purpose of avoiding supervision."

**Reasonable Efforts**

¶16    The State is also required to prove that the probation officer made "reasonable efforts" to locate the defendant. Section 46-18-203(11)(a), MCA. In *Oropeza*, we held that a probation officer made reasonable efforts to contact Oropeza when: the officer told Oropeza that he needed to contact the officer the next day; the officer visited Oropeza's residence at least twice and called Oropeza's place of employment multiple times; another probation officer personally advised Oropeza to report after seeing him in a

8

grocery store; and Oropeza's probation officer contacted Oropeza's girlfriend by phone and told her the officer needed to speak with Oropeza. *Oropeza*, ¶ 19. Fjelstad maintains that Williams' efforts stand in stark contrast to those of the probation officer in *Oropeza* and that Williams's phone calls were not sufficient because his phone was stolen. Again, we disagree.

¶17 While Williams acknowledged that she never tried to locate Fjelstad by going to his address, nor did she attempt to locate him by asking his landlord about his whereabouts, we nonetheless conclude that Williams's efforts were reasonable. While the District Court was correct in its observation that Williams may not have done "all that she could have," § 46-18-203(11)(a), MCA, does not require a probation officer to do everything in their power to locate a probationer. Rather, the statute requires "reasonable efforts." Williams called Fjelstad and left messages with him multiple times. With the exception of Fjelstad's statements to Williams and Basta that his phone was stolen, there is no other evidence in the record supporting this claim. Furthermore, even if Fjelstad's phone was stolen, he still had an obligation to report when scheduled and to notify his probation officer if his phone number changed. Williams also sent a letter, but it was returned because Fjelstad did not provide his unit number. Fjelstad similarly had an obligation to provide a correct address to Williams. Finally, Williams called Basta who said she was also unable to contact Fjelstad. William's efforts to contact Fjelstad by calling him multiple times, sending a letter, and contacting his chemical dependency counselor were adequate and reasonable.

9

**CONCLUSION**

¶18 The District Court did not abuse its discretion in determining Fjelstad absconded, a non-compliance violation of his probation conditions, and Williams was not required to exhaust MIIG procedures prior to initiating revocation proceedings against Fjelstad. The District Court's conclusion is supported by sufficient evidence that Fjelstad failed to report for the purpose of avoiding supervision, and the probation officer made reasonable efforts to contact Fjelstad.

¶19 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE